[No. D013068. Fourth Dist., Div. One. Feb. 11, 1992.]

WILLIAM LYON COMPANY, Plaintiff, Cross-defendant and Appellant, v. FRANCHISE TAX BOARD, Defendant, Cross-complainant and Respondent.

268

**COUNSEL**

Robert C. Fellmeth for Plaintiff, Cross-defendant and Appellant.

Daniel E. Lungren, Attorney General, Edmond B. Mamer and Richard W. Bakke, Deputy Attorneys General, for Defendant, Cross-complainant and Respondent.

## OPINION

**WORK, J.**—The William Lyon Company (Lyon) appeals a judgment denying its claim for solar energy system tax credits under California statutes and regulations as they existed in 1982, asserting it met all of the requirements for such tax credits. For the following reasons, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1982, Lyon constructed numerous tract homes in seven developments within California. The houses were built according to various standard plans without consideration of whether they qualified for solar energy system tax credits. A few years later, a consultant determined Lyon could qualify for tax credits for some of these houses after reviewing the plans, maps, and selected sites of actual houses in Lyon's 1982 developments. Based upon his recommendation and calculations, Lyon filed an amended 1982 California income tax return requesting a refund based upon solar energy system tax credits for which it allegedly qualified. Lyon claimed credits of $116,376 for the costs of installing excess south-facing windows, entry floor tile, and kitchen countertop tile in certain of its homes.

When the Franchise Tax Board (FTB) denied Lyon's request, citing the lack of a specific intent to qualify for such tax credits, Lyon sued to obtain the tax credits. Before trial, the court ruled Lyon need not prove it specifically intended to install a solar energy system or to qualify for a solar energy system tax credit at the time it constructed the houses. At trial, it was established that Lyon's claim was based upon its installing certain south-facing windows and kitchen and entry area tile. Lyon claims the windows are qualifying "solar glazing systems" under regulations adopted by the California Energy Commission, officially known as the Energy Resources Conservation and Development Commission (CEC). The tile is alleged to be qualifying "thermal mass" which was installed in conjunction with the solar glazing systems and entitled for credits under the regulations. The parties agreed to use Lyon's Travis Ranch development as a model for qualification of houses in the other developments.

The testimony of a solar energy expert, Dr. Donald Aitken, showed a substantial portion of the houses for which credits were claimed did not qualify, because their excess windows were not facing south or were impaired by substantial shading. Dr. Aitken also testified he had run computer

projections as to energy consumption of certain Travis Ranch houses using Micropas, a computer program widely used in the energy conservation field, showing the excess windows in one of the south-facing houses would increase energy costs by $300 annually, because additional air conditioning would be required to make the house livable. Thus, although from $8 to $12 in annual heating costs would be saved by reason of the additional windows, a very substantial increase, rather than decrease, in overall energy costs would result from Lyon's alleged passive thermal system, because the excess south-facing windows created unnecessary heating and resulted in "catastrophic overheating" and uncomfortable conditions in the living areas of the house. He said 40 to 50 square feet per 1,000 square feet of living area is the maximum amount of south-facing glass to keep the house comfortable. Since for certain houses Lyon was claiming several hundred square feet of glass for tax credits, Dr. Aitken concluded the houses were not livable as designed. It was Dr. Aitken's opinion the excess windows did not constitute a "solar glazing system" and the solar energy transmitted "cannot be used for heating." Further, Dr. Aitken stated his opinion structure of the houses do not "in any way function as a passive thermal system." Dr. Aitken's testimony was largely undisputed by Lyon.

As to the tile in the entry area and kitchen area, Dr. Aitken stated the tile could not qualify as thermal mass, because it was inferior to concrete or masonry in heat storage capacity. This testimony was contradicted by Sam Rashkin, an energy specialist for the CEC, who stated the CEC had allowed ceramic tile in entry ways and on kitchen countertops to be eligible for credits as thermal mass in other situations. However, Dr. Aitken also stated the entry tile would not qualify as thermal mass, because it was too remote from the solar energy.

The primary witness testifying on behalf of Lyon was David Hauk. Hauk's testimony almost entirely dealt with verification of his calculations in support of Lyon's claims for tax credits and orientation of the houses. Hauk did not testify as to the effective functioning of the alleged solar energy systems in providing heat for the houses.

The trial court made a number of evidentiary and legal findings in upholding the FTB's denial of tax credits. First, the court found the applicable statutes and regulations do not require any performance standard to be met in order to qualify for a tax credit (i.e., the taxpayer need not show any particular level of performance by a solar energy system). Second, the court found there was insufficient evidence to show a passive thermal system existed under the statutes and regulations, because there was no showing of any collection, storage or distribution of solar energy. Further, the court

found there was insufficient evidence to show the structural elements of the houses were used to "either collect, store or distribute solar energy." Essentially, the court found there "must be some showing that the system worked in such a way to collect, store or distribute solar energy for purposes of heating or cooling the structure." The trial court went on to make additional findings which it acknowledged were moot based on its holding, but would be helpful in the event its holdings were reversed on appeal. Specifically, the court also found the windows constituted solar devices, and, if a qualifying solar energy system were found to exist, only 78 percent of the houses qualified by virtue of their positioning and shading characteristics, and the excess windows in such houses would then qualify for tax credits as solar glazing. Further, the court found the tile in the entry areas and kitchen areas was in fact masonry, but only the kitchen countertop tile could qualify for credits because of proximity to direct sunlight. There was insufficient evidence to show the entry tile acted in conjunction with a system. However, since the court found no qualifying passive thermal system to exist based on the evidence, it held Lyon was not entitled to any tax credits for the costs of excess windows or tile in the entry and kitchen areas, and entered judgment for the FTB.

ANALYSIS

*Statute and Regulations*

In 1976, the Legislature enacted certain statutes to encourage energy conservation and the use of alternative energy sources, and, in particular, section 23601 of the Revenue and Taxation Code[1] was passed.[2] As applicable in 1982, section 23601 provided in part:

"(a)(1)  There shall be allowed as a credit against the taxes imposed by this part . . . .

"(2)  . . . 55 percent of the cost (including installation charges . . . ) incurred by the taxpayer for any solar energy system installed [not to] exceed three thousand dollars ($3,000) per solar energy system . . . .

"
.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(d)  The Energy Resources Conservation and Development Commission shall, after one or more public hearings, establish guidelines and criteria for solar energy systems which shall be eligible for the credit . . . .

[1]All statutory references are to the Revenue and Taxation Code unless otherwise specified.
[2]Section 23601 was repealed as of January 1, 1987. However, for purposes of deciding this case, we must look to section 23601 as it was in effect during 1982.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f)   The following definitions govern construction of this section:

"(1)   'Installed' means placed in position in a functionally operative state.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5)(A)   'Solar energy system' means the use of solar devices for the individual function of:

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(ii)   Space conditioning;

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The term 'solar energy system' shall include, but is not limited to, passive thermal systems, . . .

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6)   'Solar device' means the equipment associated with the collection, transfer, distribution, storage or control of solar energy. . . .

"(7)   'Passive thermal system' means a system which utilizes the structural elements of the building, and is not augmented by mechanical components, to provide for collection, storage, or distribution of solar energy for heating or cooling."

Thus, under section 23601, a taxpayer could qualify for a tax credit equal to 55 percent of its costs of installing a "passive thermal system," as one type of system specifically listed as a "solar energy system."

The CEC adopted regulations pursuant to section 23601's mandate it "establish guidelines and criteria for solar energy systems which shall be eligible." In 1982, the applicable regulations were found in sections 2601 through 2611 of title 20 of the California Code of Regulations (regulations)[3] (which was then known as the California Administrative Code). The regulations restate the same definitions of "solar energy system" and "passive thermal system" as contained in section 23601. In addition, former section 2602, subdivision (c) of the regulations defines "glazing" as a "transparent or translucent material used to transmit solar energy and to reduce the loss of thermal energy from the structure."

---

[3]All references to regulations are to title 20 of the California Code of Regulations unless otherwise specified.

Most importantly, however, the regulations set forth further standards for qualification as an eligible "passive thermal system." Former section 2604, subdivision (b) of the regulations stated:

"Passive Thermal Systems. Eligible passive thermal systems utilize the structure of a building and its operable components (and the climate resources available at the site) to provide heating or cooling during the appropriate times of the year.

"(1) Passive thermal systems which qualify for the tax credit shall include one or more of the following systems when installed . . . :

"(A) Solar Glazing. Solar glazing systems shall meet the following criteria:

"1. Glazing shall be clear (shading coefficient of 0.80 or greater per pane). . . .

"2. Glazing in walls must face south, plus or minus 45[ degrees] (i.e., between SE and SW) and be fully exposed to direct solar radiation during the heating season.

". . . . . . . . . . . . . . . . . . . . . . . .

"6. For newly constructed residential buildings, the credit shall be given for as much of the solar glazing as is in excess of one-third of all other glazing area."

The regulations also established guidelines for devices installed in conjunction with passive thermal systems which also qualify for a tax credit. Former section 2604, subdivision (b)(2) of the regulations stated:

"Devices in Conjunction With Passive Thermal Systems. The following devices shall be eligible when installed as a part of, or in conjunction with, eligible passive thermal systems.

". . . . . . . . . . . . . . . . . . . . . . . .

"(C) Thermal Mass Storage. Thermal mass within the insulated shell of the building . . . shall be eligible when installed in conjunction with a passive thermal system if the following criteria are met:

"1. The thermal mass must lie inside the insulated shell of a building if it is part of an exterior wall. . . .

"2. Eligible mass shall be in the form of water, masonry, rock, concrete walls or ceilings, or other material with equal or better heat storage capacity. Concrete slab floors . . . are not eligible. . . ."

To summarize, a "solar energy system" uses solar devices "for the individual function of . . . [s]pace conditioning." One type of solar energy system is a "passive thermal system" which is defined as a "system" which utilizes structural elements "to provide for collection, storage, or distribution of solar energy for heating or cooling." Under the regulations, passive thermal systems must "provide heating or cooling during the appropriate times of the year." The obvious meaning of this requirement is that a system must provide heating during the winter season. The regulations specifically list "solar glazing systems" as one type of eligible passive thermal system. In addition to the implicit requirement that a solar glazing system provide heating during the winter, the system must also meet certain criteria set forth in the regulations. These additional criteria are that the glazing be clear, the glazing face south and be exposed to direct solar radiation during the winter, and for new houses a tax credit is given only for solar glazing in excess of one-third of other glazing areas.

*Interpretation of Language of Statute and Regulations*

■ To decide this case, we must first interpret the language of section 23601 and the regulations. Specifically, we must determine what the Legislature meant by the term "system" and by the phrases "for the individual function of . . . [s]pace conditioning" and "to provide heating." Interpretation of statutes and regulations is a question of law to be decided by this court. (Evid. Code, § 310, subd. (a).)

■ Established rules of statutory interpretation require us to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Westfall* v. *Swoap* (1976) 58 Cal.App.3d 109, 114 [129 Cal.Rptr. 750].) While we should normally give words their usual and ordinary meaning, we also need to construe them in context with the "nature and obvious purpose of the statute." (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].) Further, a particular clause or section should be interpreted in the context of the statutory language and intent as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Legislative intent must prevail even if the literal meaning of the words is in contradiction with such intent. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) To this same effect, the Supreme Court in *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883], stated:

" 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]' " (Fn. omitted.)

We find the following statement in *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673 [56 Cal.Rptr. 265, 423 P.2d 193], to be particularly relevant in this case:

"It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. [Citations.] "

■ Statutory provisions for tax credits must be narrowly construed. As the California Supreme Court has stated, a provision allowing a tax credit "must be strictly construed against the taxpayer . . . ." (*Miller* v. *McColgan* (1941) 17 Cal.2d 432, 442 [110 P.2d 419, 134 A.L.R. 1424].) ■ Accordingly, the provisions of section 23601 and the regulations for solar energy system tax credits must be narrowly construed against Lyon.

It is common knowledge that California, along with most other states and countries, experienced a severe petroleum energy crisis during the 1970's resulting in federal and state governments taking various actions to lessen the effects of the energy crisis. One such measure was the enactment of laws that encouraged people to install energy saving devices or systems, such as solar energy systems, for the purpose of reducing the use of petroleum energy. Although there appears to be no official pronouncement, the obvious legislative intent in enacting section 23601 in 1976 was to encourage persons to reduce their consumption of petroleum energy by installing solar energy systems.[4] It is with this legislative intent in mind we interpret the provisions of section 23601 and the regulations.

In this case, there are three requirements of the statute and regulations that are open to interpretation in light of either ambiguity or conflict with

---

[4]This intent of the Legislature is confirmed in state Senator Alquist's transmittal letter to Governor Brown dated May 11, 1976, which forwarded Senate Bill No. 218 enacting section 23601 to Governor Brown for his approval. Senator Alquist stated in that letter: "Your signature on this bill would be a signal to the people of this state and the nation that California is ready to lead the way in *energy conservation*." (Italics added.)

legislative intent. First, there is a consistent requirement in the statute and regulations that a "system" be installed, as opposed to merely a "device." Since the statute and regulations do not define this term, we look to the common meaning of "system." One authority defines a "system" as "a complex unity formed of many often diverse parts subject to a common plan or serving a common purpose" or "a group of devices . . . forming a network . . . for a common purpose." (Webster's New Internat. Dict. (3d ed. 1966) p. 2322.) Thus, it is implicit the term "system" in section 23601 and the regulations refers to a mechanism in which multiple parts work together to provide solar energy according to the provisions of the statute.

Second, in this case "solar energy system" means the use of solar devices for the "function of . . . [s]pace conditioning." The phrase "space conditioning" is not defined. However, in light of the legislative intent discussed above, we interpret "space conditioning" to mean the heating or cooling of living space to provide a comfortable environment for the persons using the space.

Third, a "passive thermal system," including a solar glazing system, must utilize the structure of the building "to provide heating or cooling during the appropriate times of the year." In this case, it is heating during the winter season that is applicable. In light of the legislative intent to encourage the installation of energy saving devices and the rule of narrow construction of tax credit provisions, we conclude the phrase "to provide heating" requires the passive thermal system to provide heating that is useful in maintaining a comfortable temperature within the living space.

Therefore, unless Lyon proved at trial it installed devices that function together for the common purpose of providing heating during the winter season in order to maintain a comfortable temperature within the living space, it will not be entitled to tax credits under section 23601.

*Substantial Evidence*

The judgment of the trial court must stand unless there was no substantial evidence presented at trial which would support its judgment holding Lyon was not entitled to the tax credits under section 23601. As one court

recently stated, the substantial evidence standard of review means that a reviewing court "must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 506-507 [286 Cal.Rptr. 714].) Accordingly, we must look only at the evidence supporting the judgment and disregard evidence to the contrary. (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].)

Our review of the trial record supports the findings of the trial court that there was insufficient evidence presented by Lyon to show the solar glazing system worked to collect, store or distribute solar energy for purposes of heating the structure. The record reflects the testimony of Dr. Aitken, an expert in solar energy, to the effect that the alleged systems installed by Lyon would not provide any useful heating in terms of a comfortable environment as drastic overheating would result, but also that the alleged systems would substantially increase overall energy costs due to increased air conditioning which would be required due to the overheating situation. Further, the declaration of Rashkin supported the conclusion that Lyon had not installed passive solar energy systems in the houses. The testimony of Hauk was merely to describe the location and orientation of the houses and the glass and tile in the houses. He did not, nor did any other witness, testify as to the effective functioning of the solar glazing in the houses in order to maintain a comfortable living space or to save energy costs.

The burden of proof at trial was upon Lyon to establish its entitlement to tax credits under section 23601, and the court found there was insufficient evidence in the record to establish a right to tax credits. Our review of the trial court record indicates there was substantial evidence to support the trial court's judgment. Lyon failed to prove it installed solar energy systems or passive thermal systems eligible for tax credits under section 23601. Since Lyon did not prove the installation of passive thermal systems, it logically follows that no thermal mass (i.e., the tile in the entry areas and kitchen areas) could possibly be installed "in conjunction with" passive thermal systems. Accordingly, we hold Lyon is not entitled to tax credits under section 23601 for any of its windows or tile installed in houses during 1982.[5]

---

[5]In light of our holding, there is no need to address, and we do not address in any manner, the FTB's reassertion on appeal that section 23601 requires a specific intent either to install a solar energy system or to qualify for a tax credit under section 23601.

## DISPOSITION

Judgment affirmed.

Kremer P. J., and Froehlich, J., concurred.

A petition for a rehearing was denied March 4, 1992, and appellant's petition for review by the Supreme Court was denied April 22, 1992.