59 P.3d 983

**Earle and Jolyn CANTY, Plaintiffs–Respondents,**

v.

**IDAHO STATE TAX COMMISSION, Defendant–Appellant.**

**No. 27354.**

Supreme Court of Idaho,
Coeur d'Alene, 2002 Term of Court.

Nov. 29, 2002.

Alan G. Lance, Attorney General, Boise, for appellants. Charles E. Zalesky argued.

Elsaesser, Jarzabek, Anderson, Marks, El-liott & McHugh, Sandpoint, for respondent. Bruce A. Anderson argued.

SCHROEDER, Justice.

This is an individual income tax case involving the Idaho credit for taxes paid statute, I.C. § 63–3029. The parties filed cross-motions for summary judgment, which the district court granted in favor of the taxpayers, Earle and Jolyn Canty (Cantys). The district court held that the Cantys were entitled to a credit on their 1995 and 1996 Idaho individual income tax returns for taxes paid in their 1994 California income tax return, finding that the Idaho credit for taxes paid statute was ambiguous and could be read to allow credit for taxes paid to another state in a prior taxable year. The Idaho State Tax Commission (Commission) contends that the credit provision is specifically limited to taxes paid to another state for the same taxable year.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to 1994 the Cantys lived in California where Earle Canty (Canty) was an executive for Ventritex, Inc. As part of his compensation package, Canty received incentive stock options. In February of 1994 Canty exercised stock options, purchasing 63,732 shares of Ventritex stock for $45,241.60. Shortly thereafter, he terminated his employment. In June of 1994 the Cantys moved to Hayden Lake, Idaho. In September and October of 1994 Canty exercised additional stock options with Ventritex that allowed him to purchase 10,500 more shares of Ventritex stock. As a result of exercising these stock options in 1994, Canty received a total of 74,232 shares of Ventritex stock. In 1994 Canty's total unrealized gain for exercised stock options was $1,835,569.

The Cantys filed individual tax returns for 1994 in California and Idaho. They reported total unrealized gains of $1,835,569 in California. They paid about $157,000 to the State

of California as an alternative minimum tax (AMT), which was triggered because of the acquisition of the Ventritex stock. California treats the exercise of incentive stock options as a taxable event, requiring such purchaser to pay an "alternative minimum tax" on unrealized gains associated with such purchases. Idaho, however, does not treat such a purchase as a taxable event. California gives taxpayers an alternative minimum tax credit for this payment for the same amount which may be carried forward indefinitely and used to offset liability on future California tax returns. The Cantys filed an Idaho part-year resident individual income tax return. They did not report the $1,835,569 as taxable income in Idaho and no Idaho tax was paid.

In 1995 the Cantys sold some of their Ventritex stock resulting in a taxable gain of $1,000,902. On their 1995 Idaho tax return, however, they only reported $176,595 in taxable gain from the sale of the stock due to a miscalculation of the basis.[1] In 1996 the Cantys again sold some of their Ventritex stock and miscalculated the basis for their tax return, underestimating their 1996 taxable income by $138,391. The Tax Commission subsequently selected their 1995 and 1996 returns to be audited. During the audits the Tax Commission discovered the errors and adjusted the proper income and tax due accordingly. In addition the Tax Commission found that the Cantys had claimed a tax credit in 1995 on their Idaho tax return for AMT paid to California. The auditors disallowed that credit because the Cantys had paid no California income tax for the 1995 taxable year.

The Cantys filed a timely protest and sought a redetermination of the Notice of Deficiency Determination. They disagreed with the auditors' determination that they could not apply the credit for taxes paid to California and disagreed with the adjustments. The Tax Commission denied the appeal. The Cantys appealed the Tax Commission decision to the district court. The Commission filed a Motion for Summary Judgment, supported by affidavits from

---

1. The Cantys also filed a non-resident California individual tax return in 1995, but paid no taxes

to California because of a claimed AMT credit of $13,199 for taxes paid to California in 1994.

Mark Jeffrey and Charles Zalesky. The Cantys filed a Cross–Motion for Summary Judgment with affidavits from Earle Canty and Bruce Anderson. The district court granted summary judgment for the Cantys, and the Tax Commission appealed.

## II.

### THE CANTYS ARE NOT ENTITLED TO A CREDIT ON THEIR 1995 AND 1996 IDAHO INDIVIDUAL INCOME TAX RETURN FOR THE CALIFORNIA ALTERNATIVE MINIMUM TAX THEY PAID FOR THE 1994 TAXABLE YEAR

#### A. Standard of Review

■ When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard as the district court's original ruling on the motion. *Farmers Ins. Co. v. Talbot,* 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999) (citing *Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 200, 899 P.2d 411, 413 (1995)). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995).

#### B. The credit for taxes paid in a previous year in another state may not be credited against subsequent tax liability in Idaho.

■ This case involves the interpretation of Idaho Code § 63–3029. The object in interpreting a statute is to "derive the intent of the legislative body that adopted the act." *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). "Such analysis begins with the literal language of the enactment." *Id.* at 557, 976 P.2d at 483. If the statutory language is unambiguous, "the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Id.* at 557, 976 P.2d at 483.

The Idaho Court of Appeals described in *State v. Browning* when a statute is ambiguous:

A statute is ambiguous when the meaning is so doubtful or obscure that "reasonable minds might be uncertain or disagree as to its meaning." *Hickman v. Lunden,* 78 Idaho 191, 195, 300 P.2d 818, 819 (1956). "However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous.... [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it." *Rim View Trout Co. v. Higginson,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992).

123 Idaho 748, 750, 852 P.2d 500, 502 (Ct. App.1993).

■ Where an ambiguity is found in tax statutes, the statutes are generally "strictly construed against the taxing authority and in favor of the taxpayer and ambiguities therein are to be resolved in favor of the taxpayer." *Department of Employment v. Diamond Int'l Corp.,* 96 Idaho 386, 387, 529 P.2d 782, 783 (1974). If there is ambiguity in a tax statute specifically regarding deductions, however, "the law is to be construed strongly against the taxpayer." *Potlatch Corp. v. Idaho State Tax Comm'n,* 128 Idaho 387, 389, 913 P.2d 1157, 1159 (1996); *see also Manufab, Inc. v. Mississippi State Tax Comm'n,* 808 So.2d 947, 949 (Miss.2002) (tax credits and exemptions construed strictly against taxpayer); *Bennett v. State Dep't of Assessments and Taxation,* 143 Md.App. 356, 795 A.2d 124, 132 (Md.2001) ("It is a firmly established principle of law that exemptions from taxation are not favored, but are strictly construed in favor of the State."); *Hermann v. Director of Revenue,* 47 S.W.3d 362, 365 (Mo.2001) (en banc), *reh'g denied,* (June 26, 2001) ("Tax credits and exemptions are construed strictly and narrowly against the taxpayer"); *William Lyon Co. v. Franchise Tax Board,* 4 Cal.App.4th 267, 5 Cal.Rptr.2d 680, 685 (1992) (same).

At issue in this case are both the 1995 and 1996 statutes. The 1995 version of the statute reads as follows:

**63–3029. Credit for income taxes paid another state or territory.**—(a) Whenever a resident person, excluding corporations, has become liable for income tax to another state, as a nonresident of such state, upon his taxable income, or any part thereof, for the taxable year, which is derived from sources without this state and subject to taxation under this chapter, the amount of income tax payable by him under this chapter shall be credited with the income tax so payable by him to such other state or territory.... The credit granted shall be limited to the proportion of the tax computed under this chapter, but before the allowance of this credit, which the adjusted gross income as defined in section 62 of the Internal Revenue Code from such other state or territory bears to total adjusted gross income as defined in section 62 of the Internal Revenue Code; provided, however, that such credit shall not be in excess of the actual tax payable to such other state or territory and that such adjusted gross income shall be corrected to reflect additions to and subtractions from income required by this act.

I.C. § 63–3029(a) (1989). The 1996 statute provides the following:

**63–3029. Credit for income taxes paid another state or territory.**—(a) Whenever a resident individual has become liable for income tax to another state upon his taxable income, or any part thereof, earned while domiciled in this state, which income is derived from sources without this state and subject to taxation under this chapter, the amount of income tax payable by him under this chapter shall be credited with the income tax so payable by him to such other state or territory.... The credit granted shall be limited to the proportion of the tax computed under this chapter, but before the allowance of this credit, which the adjusted gross income from such other state or territory bears to total adjusted gross income; provided, however, that such credit shall not be in excess of the actual tax payable to such other state or territory and that such adjusted gross income shall reflect additions and subtractions required by this act.

I.C. § 63–3029(a) (1996). On the face of both the 1995 and the 1996 statutes it appears clear that the credit is applicable in Idaho in the year the tax was payable in the other state. There is nothing to indicate a legislative intent to create an open-ended right to use the credit at some future date from the year the tax became payable.

Even if the statutes are interpreted as being ambiguous the result is the same. There is an agency decision which is entitled to some level of deference. The Tax Commission has interpreted the statute as only allowing credits for taxes paid to other states in the same year that it is sought to be applied to Idaho tax liability. The level of deference that should be granted the agency interpretation is determined under the *J.R. Simplot* test. *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho at 849, 862–63, 820 P.2d 1206, 1219–20 (1991).

■ The first prong asks if the agency is entrusted to administer the statute at issue, so it is "impliedly clothed with power to construe" this law. This prong is met.

■ The second prong says that the agency interpretation must be reasonable. An agency's interpretation is reasonable if it is not "so obscure and doubtful that it is entitled to no weight or consideration." *J.R. Simplot Co.*, 120 Idaho at 862, 820 P.2d at 1219 (quoting *State v. Omaechevviaria*, 27 Idaho 797, 803, 152 P. 280, 281 (1915)). The agency interpretation is reasonable for several reasons. First, it appears that other states similarly limit the use of tax credits to the year the income was taxed: *See* Hellerstein & Hellerstein, *State Taxation*, ¶ 20.10, at 20–81 (3rd ed.2000). Second, the statute concerning a tax credit should be construed in favor of the state. Finally, the agency interpretation guards against double taxation but limits the application of this doctrine.

■ The third prong of the *Simplot* test requires the Court to determine that the statutory language does not expressly treat the precise question at issue. If it does, no deference need be given to the agency. The statutes do not explicitly treat the question of incentive stock options that can be exercised in one year and sold years later, resulting in

two taxable events in two different states at different times.

 The fourth prong requires the court to look for the rationales underlying deference. The rationales to be considered include:

> (1) the rationale requiring that a practical interpretation of the statute exists, (2) the rationale requiring the presumption of legislative acquiescence, (3) the rationale requiring agency expertise, (4) the rationale of repose, and (5) the rationale requiring contemporaneous agency interpretation.

*Preston v. Idaho State Tax Comm'n*, 131 Idaho 502, 505, 960 P.2d 185, 188 (1998). "If the underlying rationales are absent then their absence may present 'cogent reasons' justifying the court in adopting a statutory construction which differs from that of the agency." *J.R. Simplot Co.*, 120 Idaho at 862, 820 P.2d at 1219. When only some of the rationales are present, the court must balance the supporting rationales, as all are not weighted equally. *Id.* at 862, 820 P.2d at 1219. "If one or more of the rationales underlying the rule are present, and no 'cogent reason' exists for denying the agency some deference, the court should afford 'considerable weight' to the agency's statutory interpretation." *Id.* at 862, 820 P.2d at 1219.

 The first rationale is that the agency interpretation is "practical." This rationale "apparently refers to the fact that statutory language is often of necessity general and therefore cannot address all of the details necessary for its effective implementation." *J.R. Simplot Co.*, 120 Idaho at 858, 820 P.2d at 1215. It is more practical to interpret the statute to have a discrete period of application than to allow an open-ended use of the credit in Idaho for events that occurred at some earlier time in a different state.

 The second rationale asks if there is legislative acquiescence. The Court in *J.R. Simplot* stated that "[b]y not altering the statutory text the legislature is presumed to have sanctioned the agency interpretation." 120 Idaho at 859, 820 P.2d at 1216. In 1995, Idaho Code § 63–3029 was amended, effective January 1, 1996, and one of the changes was to delete the language "for the taxable year." *See* 1995 Idaho Sess. Laws, Ch. 111, § 30, p. 372. The comment says regarding the deletion: "unnecessary language deleted." 1995 House and Taxation, Jones Subcommittee minutes dated 2/7/95. In 1998 the language "for the taxable year" returned, with the purported reason being to equalize treatment among different taxable entities, and was meant only to clarify existing law. *See* Revenue and Taxation Committee Minutes, dated 1/14/1998. Also, Income Tax Administrative Rule 700, which codifies the Tax Commission's interpretation in this case, was proposed in 1997 and reviewed by a House and Senate committee and approved in 1998. There is enough evidence for this rationale.

 The third rationale asks whether the agency has expertise. The Idaho State Tax Commission has expertise in the field of state tax laws.

 The fourth rationale is that of repose. The Tax Commission has shown evidence of two agency decisions and one district court decision that have followed their interpretation of the statute. As such decisions are not regularly accessed or relied upon for legal precedent, especially as they are apparently recent, the probability that taxpayers have come to rely on the agency position is slight.

 The fifth rationale requires that the agency interpretation be contemporaneous with the passage of the legislation. Here, I.C. § 63–3029 was passed in 1961. No interpretation appears to have been offered until at least 1996 or 1997. The interpretation is far from contemporaneous with the passage of the statute.

Under the *J.R. Simplot* test, then, the first three criteria are met. The agency is "clothed with authority," the interpretation is reasonable, and the statute does not precisely treat the issue in this case. Among the five rationales considered under the fourth prong, three rationales are present—practicality of application, agency expertise and legislative acquiescence. As to the latter rationale, the Court in *J.R. Simplot* noted in a footnote that "[p]resumed legislative acquiescence in the face of its own inaction has

been labeled a very weak reed on which to base a decision." *Id.* at 859 n. 6, 820 P.2d at 1216 n. 6 (citations omitted).

The statutes are easily read to preclude the application sought by the Cantys. Even if viewed as ambiguous, statutes regarding tax credits are construed in favor of the state. Application of the *J.R. Simplot* test weighs in favor of deference to the agency interpretation. The Cantys are not entitled to a tax credit in Idaho for taxes paid in California in a prior year.

### III.

### THE DISTRICT COURT ERRED IN ITS ALTERNATIVE HOLDING THAT THE CANTYS ARE ENTITLED TO AN INCREASE IN THE BASIS OF THEIR STOCK

 The alternative holding of the district court is that if the tax credits are not applicable an increase in the basis of the stock as a result of paying the alternative minimum tax in another state should be allowed. There is no legal authority for increasing the basis of the Ventritex stock to the fair market value at the time it was purchased. The district court cites the district court opinion in *Idaho State Tax Commission v. Stang*, Benewah County Case No. CV–98–00135 (September 29, 1999), acknowledging that the case is not directly on point, but relying on its general proposition that double taxation is discouraged. In *Stang*, the taxpayer had paid income tax to California on funds contributed to IRAs, and subsequently sought to use those payments as tax credits against Idaho taxes for money withdrawn from those IRAs. The district court did not have the benefit of this Court's ruling in *Stang* holding that the income could be taxed twice, and that no Idaho law allowed an exemption under the facts of the case. The reasoning in *Stang* applies:

> Any exemption from taxation must be created or conferred in clear and plain language and cannot be made out by inference or implication. This Court does not have the authority to create deductions, exemptions, or tax credits. If the provisions of the tax code are socially or eco-

nomically unsound, the power to correct it is legislative, not judicial.

*Idaho State Tax Comm'n v. Stang,* 135 Idaho 800, 803, 25 P.3d 113, 116 (2001) (citations omitted). The Cantys are not entitled to an increase in the basis of the stock.

### IV.

### CONCLUSION

The decision of the district court is reversed. The case is remanded for calculation of the tax in light of this holding. Costs are awarded to the Tax Commission. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN **concur.**