553 A.2d 691

STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

v.

Horace E. BELCHER, Jr., et ux.

No. 25, Sept. Term, 1987.

Court of Appeals of Maryland.

Feb. 28, 1989.

David M. Lyon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kaye Brooks Bushel, Asst. Atty. Gen., on the brief), Baltimore, for appellant.

Horace E. Belcher, Jr., Cockeysville, pro se.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and JAMES F. COUCH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

COLE, Judge.

The sole issue to be decided in this case is whether, a taxpayer, whose net income resulted from his management of his stock portfolio, is entitled to a homeowner's property tax credit pursuant to the Maryland "circuit breaker" law.

The legislative enactment involved is Maryland Code (1957, 1980 Repl. Vol.) Article 81, Section 12F–1.[1] This

---

1. The legislative history of the circuit breaker program can be briefly summarized. In Acts of Md.1963, ch. 883, § 2, the several counties and municipal corporations of this state were given the authority to enact ordinances, in their discretion, to provide tax credits on the basis of age, income, and value of property of the taxpayer. *See* Md.Code (1957, 1965 Repl.Vol.) Art. 81, § 12D. In 1967, the legislature added § 12F to Art. 81 which made tax credits mandatory for homeowners who were over sixty-five years of age and whose income was under $5,000. Tax credits for disabled homeowners were discretionary. *See* Acts of Md.1967, ch. 142, § 4. Section 12D remained in effect. In 1970 a legislative study was conducted in regard to the effectiveness of the mandatory tax credit program. *See* Maryland Legislative Council Committee on Taxation and Fiscal Matters 202

section of the Code, also known as the "circuit breaker" law, is a legislative device for granting property tax relief to low-income taxpayers. The term "circuit breaker" is used to characterize the law which is intended to protect the taxpayer's household income from property tax overload similar to the manner in which an electrical circuit breaker protects the wiring in a taxpayer's home from current overload. Stated another way, when the taxpayer's residential property tax bill reaches a set percentage of his annual income, the circuit breaker is automatically activated so that the state government grants him relief from the excess tax load. Maryland grants relief in the form of a credit on the low-income taxpayer's income tax bill.

This law reflects a legislative determination that low-income homeowners should not be forced to sell their homes to satisfy property tax deficiencies. This legislative program is particularly significant in granting relief to elderly taxpayers, whose property has appreciated while their income has remained fixed. However, relief is also available to any taxpayer, regardless of age, whose income is depressed in a particular year. Critical to a determination of whether a taxpayer is entitled to a tax credit is the amount of his annual gross income, which term is defined in § 12F-1(a)(6) of Article 81 and provides as follows:

"Gross income" means total income from all sources, for the calendar year immediately preceding the taxable year, whether or not included in the definitions of gross income for federal or State tax purposes, including but not limited to benefits under the Social Security Act or Railroad Retirement Act as these acts may be amended from time to time, the aggregate of gifts in excess of

(1970). Ultimately, § 12F was repealed and § 12F-1 was enacted in its place. *See* Acts of Maryland 1974, ch. 750, § 4. This latter provision mandated that tax credit entitlement be based on income rather than age. Further, the state would reimburse the local jurisdictions for revenues lost by virtue of the tax credit program. The property tax laws of Maryland have now been compiled in the Tax-Property Article of the Annotated Code of Maryland as enacted by ch. 8, Laws of Maryland, 1985.

$300, alimony, support money, nontaxable strike benefits, public assistance received in cash grants, pensions, annuities, unemployment insurance benefits, and workmen's compensation benefits. *The term includes the net income received from business, rental, or other endeavors.* A loss from business, rental or other endeavor may not be used in the determination of gross income. The term does not include any income tax refund received from the State or the federal government.

[Emphasis added].

In order to place this issue in proper focus, we recite the salient facts. In 1984, Horace E. Belcher, Jr., the appellee-taxpayer, borrowed a substantial amount of money for purposes of investment. Belcher invested the money in various stocks and realized a substantial profit. In particular, he earned $5,879.00 in dividends and $7,036.00 in long term capital gains for a total income of $12,915.00. In that year, Belcher paid $7,580.00 in interest charges on the funds he borrowed, and spent $150.00 to obtain various types of investment advice. These expenses left Belcher with a net income of $5,185.00.

When Belcher filed his 1984 Maryland tax return, he also filed an application for a homeowners' property tax credit. Belcher reported his net income of $5,185.00 on this application and was initially granted a tax credit of $1,186.30 which reduced his real property tax liability.

Shortly thereafter, however, the Homeowners' Tax Credit Office (Credit Office), a division of the State Department of Assessments and Taxation (the Department), conducted an audit of Belcher's return and determined that his tax credit should be reduced to $171.59. The Credit Office's position was that Belcher should have reported $12,915.00 rather than $5,185.00 as his income. The Credit Office determined that Belcher's combined expenses of $7,730.00 should not be considered in determining the amount of property tax credit to which Belcher was entitled.

Belcher remitted the difference between the original tax credit and the adjusted tax credit, a total of $1,014.71, and appealed the adjustment to the Property Tax Assessment Appeal Board for Baltimore County (the Board). The Board found in favor of Belcher and remanded the case to the Credit Office for recomputation of the tax credit. The Department appealed this ruling to the Maryland Tax Court.

The Maryland Tax Court ruled as a matter of law that Belcher's investment activities constituted an "endeavor" as that term is utilized within the statute. Accordingly, the Tax Court held that Belcher was entitled to report the net income he derived from his investment activities on his application for the Maryland homeowners' property tax credit. The Circuit Court for Baltimore County affirmed the Tax Court in all respects, ruling that an "endeavor" is an "activity for profit other than traditional business." The Department appealed to the Court of Special Appeals. We granted certiorari prior to consideration by the intermediate appellate court.

Before this Court, the Department suggests that the tax credit statute, like a tax exemption provision, should be strictly construed in favor of the State. Further, the Department asserts that the taxpayer has the burden of establishing his entitlement to the tax credit and must overcome the presumption that the taxing power of the state is not relinquished. As the Department sees it, the management of one's personal stock portfolio is not "business, rental, or other endeavors." Belcher has allegedly failed to establish that the legislature intended that the term "other endeavors" encompasses his personal investment activities. Thus, the Department concludes that the gross income derived from Belcher's investment activities must be utilized in calculating Belcher's tax credit entitlement.

The Department further contends that the rules of statutory construction preclude a finding that the legislature intended to extend the statute to the circumstances of this case. First, the Department asserts that a reasonable

interpretation of the phrase "business, rental, or other endeavors" connotes an activity in which "some sort of service or goods [are] offered to the public." Since Belcher's activities were strictly personal, they do not qualify under this phrase.

Next, the Department suggests that the circuit court's ruling that "other endeavors" includes any activity for profit is erroneous. The Department contends that such a broad meaning renders the antecedent words "business" and "rental" superfluous. The Department argues that *ejusdem generis,* a principle of statutory interpretation, requires that "other endeavors," a general term, be limited in definitional scope to that given the antecedent term "business." The Department concludes that since management of one's own stock portfolio is not a "business" it is, by virtue of *ejusdem generis,* not an "endeavor." [2]

Finally, the Department contends that a broad reading of "other endeavors" will place an unmanageable administrative burden on the Credit Office. The Department asserts that the total number of tax credit applications reviewed by the credit office will diminish by virtue of the fact that more time will have to be spent deciding whether particular activities are "other endeavors" and whether the expenses arising in the course of these "other endeavors" are properly deductible in calculating net income.

Belcher, on the other hand, seeking to have the judgments of the lower courts affirmed, filed a *pro se* brief with the Court, from which we glean the following arguments. Belcher's primary contention is that the "other endeavors" referred to in § 12F–1(a)(6) do not have to constitute a "business" in the traditional sense of one offering goods or services to the public at large in order to qualify under the statute. If this Court adopts the Department's narrow definition of "other endeavors," Belcher suggests that the economic implications will force him to terminate his profit-

---

**2.** We shall discuss the impact of the doctrine of *ejusdem generis* on the phrase "other endeavors" later on in this opinion.

able investment activities. Belcher proffers that if his tax credits are reduced by $1,014.17, as the Department wishes, he will be unable to pay the full amount of his property taxes. In this regard, Belcher contends that he would be in no worse financial condition if he were to cease investing and seek out the public assistance benefits which he would then be qualified to receive. From Belcher's standpoint, it is difficult to believe that the legislature structured the tax credit program so as to discourage persons like himself from engaging in profitable activities. Rather, he asserts that the proper inquiry under the circuit breaker statute is two-fold: (1) is there a profit motive for the endeavor, and, (2) are the related expenses ordinary and necessary to conduct the endeavor.

■ Under the facts presented in this case we agree with the courts below that Belcher's investment activity constitutes "other endeavors" as that term is used within § 12F–1(a)(6). We explain.

The standard of review to be applied in cases appealed from the Maryland Tax Court is set forth in Md.Code (1957, 1980 Repl.Vol., 1987 Cum.Supp.) Art. 81, § 229(*o*) which provides in pertinent part: "The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." In accord with this statutory directive, the proposition is well established in the caselaw of this Court that "a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Ramsey, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985). (Citations omitted). We agree with the lower courts that the issue presented in this appeal presents a solitary question of law.

It is recognized in both the common law and by legislative directive that exemptions from taxation are to be strictly construed in favor of the State; to doubt an exemption is to deny it.

It is a firmly established principle of law that exemptions from taxation are not favored, but are strictly construed in favor of the State.... Therefore, before any claimant can obtain an exemption, it is encumbent [sic] upon him to show affirmatively that the alleged exemption has been clearly allowed by law. If there is a real doubt upon the subject, that doubt must be resolved in favor of the State. It is only where the deliberate purpose of the Legislature to grant an exemption is expressed in clear and unequivocal terms that a claim to an exemption can be maintained. *City of Baltimore v. Grand Lodge of Masons*, 60 Md. 280, 282, 283. The rule of strict construction of tax exemptions does not call for strained or unreasonable construction to the extent of being adverse to the real legislative intention, for the judicial interpretation must always be in accordance with the actual meaning of the lawmaking power. But an exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the exemption law. (Citations omitted).

*Pittman v. Housing Authority*, 180 Md. 457, 460–61, 25 A.2d 466, 468 (1942). *See also Supervisor v. Trs., of Bosley Meth. Ch.*, 293 Md. 208, 212–13, 443 A.2d 91, 93–94 (1982); *Warlick v. Supervisor of Assess.*, 272 Md. 540, 545, 325 A.2d 587, 590 (1974); *Ballard v. Supervisor of Assess.*, 269 Md. 397, 403, 306 A.2d 506, 509 (1973); *Perdue v. St. Dep't of Assess. & T.*, 264 Md. 228, 232–33, 286 A.2d 165, 167–68 (1972); *Macke Co. v. St. Dep't of Assess. & T.*, 264 Md. 121, 133, 285 A.2d 593, 599 (1972); *Atlantic, Gulf v. Dep't of Assess. & T.*, 252 Md. 173, 182–83, 249 A.2d 180, 186 (1969); *Pan Am. Sulpher v. Dep't of Assess. & T.*, 251 Md. 620, 629, 248 A.2d 354, 359 (1968); *Gordon v. Mayor & C.C. of Balt.*, 5 Gill 231, 237–38 (1847); *Baltimore County v. DeChiaro Ltd.*, 70 Md.App. 672, 678, 523 A.2d 624, 627 (1987); *Mechlin v. Comptroller*, 48 Md.App. 242, 246, 426 A.2d 1387, 1389 (1981); Sutherland, *Statutory Construction* § 66.09 (N. Singer 4th ed. 1985); *Cooley on Taxation* 356–62 (3d ed. 1903). Moreover, Maryland Code (1957, 1980

Repl.Vol.) Article 81, § 9(a), expressly provided that property tax exemptions be strictly construed. *Accord* Maryland Code (1986) § 7–101 of the Tax–Property Article. This rule of strict construction is one born of necessity; it is a rule designed to provide continuity between those provisions which grant real property tax exemptions and Article 81, § 8(1), which provides that all real properties in this state shall be subject to assessment and taxation *to the fullest extent possible under the law.* *Accord* Md.Code (1986) § 6–101(a)(2) of the Tax–Property Article.

■ This rule of construction is equally applicable when tax credits are implicated. Although tax exemptions and tax credits can be distinguished in their manner of operation, their effect on the state is the same: a reduction in the amount of revenues passing to the state. *See Warlick,* 272 Md. at 545, 325 A.2d at 590; 63 Op.Att'y Gen. 38, 40 (1978); 60 Op.Att'y Gen. 732, 735 (1975).

Notwithstanding that § 12F–1 must be strictly construed, this Court's primary objective is to "discover and to carry out the real legislative intention." *Maryland Medical Service, Inc. v. Carver,* 238 Md. 466, 477–78, 209 A.2d 582, 588 (1965). *See also Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987); *Comptroller v. Mandel Re-Election Com.,* 280 Md. 575, 578–80, 374 A.2d 1130, 1132 (1977) *quoting State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976); *Dep't of Assess. & Tax. v. Glick,* 47 Md.App. 150, 156–57, 422 A.2d 34, 37–38 (1980). Nevertheless, the rule of strict construction should not be utilized to defeat the intent of the legislative body. *See e.g., Atlantic, Gulf v. Dep't of Assess & T.,* 252 Md. 173, 183, 249 A.2d 180, 186 (1969).

Our cases make clear that the primary source for determining legislative intent is the language used in the statute. *See Giant of Md. v. State's Attorney,* 267 Md. 501, 511, 298 A.2d 427, 433 (1973), and cases cited therein. In the context of this case, we must "ascertain whether the language of [§ 12F–1] clearly and unambiguously include[s] the claimed

items by words used in their ordinary and popularly understood meaning. A court cannot extend the scope of [a tax credit] by giving to the language creating it a forced, strained, and unnatural construction." *Perdue*, 264 Md. at 232, 286 A.2d at 167 (Citations omitted).

As indicated, our focus in this case is on the words "other endeavors." Unfortunately, the legislature did not provide a definition of the term "other endeavors" within the circuit breaker provisions. We further note that the phrase "net income received from business, rental, or other endeavors" is unique among the definitions of gross income in the circuit breaker provisions of our sister states, and thus, we are not aided by looking to other statutes. Accordingly, we turn to commonly recognized definitions of "endeavor." Webster's Third New International Dictionary 748 defines "endeavor" as follows:

2. To work with set purpose: make an effort ... a serious determined effort.

Black's Law Dictionary 473 (5th ed. 1979) defines the word:

To exert physical and intellectual strength toward the attainment of an object. A systematic or continuous effort.

■ As we see it, Belcher's investment activities were clearly an endeavor within the ordinary and popularly understood meaning of that term. The Department asserts, however, that the meaning of "other endeavors" is limited by the rules of statutory construction, in particular, by the rule of *ejusdem generis*. Sutherland says:

The doctrine of ejusdem generis is an attempt to reconcile an incompatibility between specific and general words so that all words in a statute ... can be given effect, all parts of a statute can be construed together and no words will be superfluous. If the general words are given their full and natural meaning, they would include the objects designated by the specific words, making the latter superfluous. If, on the other hand, the series of specific words is given its full and natural meaning, the general words

are partially redundant. The rule "accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words."

Sutherland, *Statutory Construction* § 47.17 (N. Singer 4th ed. 1985). (Footnotes omitted). On the other hand, the general words will not be restricted in meaning if upon a consideration of the context and the purpose of the particular statutory provisions as a whole it is clear that the general words were not used in the restrictive sense. *Id.* at § 47.22.

As we see it, application of the rule of *ejusdem generis*, in the manner suggested by the Department, is unreasonable under the circumstances, and will render the words "other endeavors" superfluous. If "other endeavors" must be a business, as the Department contends, then "other endeavors" is subsumed within the meaning of business. This result is in contravention of the fundamental rule of construction that a statute should be construed so that all words therein are given effect, *see e.g., Sinai Hosp. v. Dep't of Employment,* 309 Md. 28, 39–40, 522 A.2d 382, 388 (1987); Sutherland, *supra,* § 47.21, and is inconsistent with our perceptions of the legislative intent. In light of the purpose and operation of the circuit breaker program as a whole, we are certain that the letter and the spirit of § 12F–1 is furthered by classifying Belcher's investment activities as "other endeavors" within the meaning of the statute. It is this net income amount which reflects Belcher's *true ability to pay property taxes,* and therefore this amount must be utilized in calculating Belcher's tax credit entitlement. Belcher has pursued his investment activities in good faith and should not be discouraged.

The alternative would be to deny Belcher the tax credits and thereby raise his property tax liability. Under the circumstances presented, we see no lawful basis for deny-

ing Belcher the same tax credits that a taxpayer engaged in a traditional "business" would be entitled to receive.

As we see it, Belcher was engaged in investment activity to earn a profit. The record, and Belcher's federal tax returns, reveal that this activity was his sole source of income in 1984. Moreover, Belcher demonstrated a commitment to this type of investment activity for a substantial period of time. The mere fact that Belcher was not providing goods or services to the public is irrelevant.

In light of the foregoing, we conclude that the judgment of the circuit court should be affirmed.

JUDGMENT AFFIRMED. APPELLANT TO PAY COSTS.