742 A.2d 22

MARYLAND INSURANCE ADMINISTRATION

v.

MARYLAND INDIVIDUAL PRACTICE ASSOCIATION, INC.

No. 160, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Dec. 6, 1999.

Dorothy J. Wilson, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the briefs), Baltimore, for Appellant.

M. Albert Figinski (Saul, Ewing, Weinberg & Green, on the brief), Baltimore, for Appellee.

Argued before MOYLAN, DAVIS and EYLER, JJ.

EYLER, Judge.

The two-part issue presented by this appeal, one of first impression, is whether (1) claims for payment submitted by a health care provider to a health maintenance organization ("HMO") that are subject to a pending workers' compensation claim are "payable by workers' compensation" within the meaning of an exclusion in the health plan and (2) whether,

pursuant to Md.Code (1996 Repl.Vol., 1998 Cum.Supp.) §§ 19–710.1 and 19–712.1 of the Health–General II Article, they must be paid within thirty days regardless of the answer to (1). We hold that a claim comes within such an exclusion when legal liability for workers' compensation arises and payment is not required within thirty days.

On February 7, 1996, Philip J. Lunz ("Lunz"), an employee of Frederick Memorial Hospital, suffered an injury to his back while working at the hospital. On March 8, 1996, Lunz filed a workers' compensation claim with the Maryland Workers' Compensation Commission. On March 19, 1996, the compensation carrier for Frederick Memorial Hospital, Group Benefit Services, Inc., filed issues contesting Lunz's claim. On April 2, 1996, Lunz visited Orthopedic Specialists of Frederick ("Orthopedic Specialists"), a specialist physicians' group. Unaware that the compensation claim was pending, Maryland Individual Practice Association, Inc. ("MD–IPA"), appellee, Lunz's health insurer, authorized treatment by Orthopedic Specialists, a group under contract with MD–IPA. On April 3, 1996, Orthopedic Specialists performed a lumbar laminectomy and discectomy on Lunz.

After Lunz's surgery had been performed, MD–IPA learned that he had a pending workers' compensation claim. MD–IPA advised Orthopedic Specialists that it would delay payment until the issue of compensation was determined.

On May 9, 1996, Orthopedic Specialists filed a complaint with the Maryland Insurance Administration ("MIA"), appellant, concerning MD–IPA's decision to delay payment. On December 4, 1996, the Workers' Compensation Commission awarded Lunz workers' compensation benefits and directed Lunz's employer to "pay medical expenses in accordance with the medical fee guide of the Commission." On January 14, 1997, Orthopedic Specialists received payment from Lunz's employer for services rendered in accordance with the workers' compensation award.

On August 26, 1997, Orthopedic Specialists filed a second complaint with MIA, regarding what was described as MD–

IPA's general practice of refusing to pay claims because of pending workers' compensation claims. On March 31, 1998, MIA issued an order directing MD–IPA to "cease and desist from its policy and practice of refusing to pay claims in which a determination needs to be made as to whether or not certain services are payable under Workers' Compensation." On July 8, 1998, MIA issued a final order upholding the cease and desist order and ordered MD–IPA to pay properly submitted claims within 30 days regardless of the pendency of a workers' compensation claim.

On July 10, 1998, MD–IPA filed a petition for judicial review of MIA's decision in the Circuit Court for Baltimore City. On February 22, 1999, the circuit court reversed MIA's order. The court construed the terms of the health plan provided by MD–IPA and concluded that claims payable by workers' compensation were not covered services and, thus, not subject to the thirty-day payment provisions of §§ 19–710.1 and 19–712.1 of the Health–General II Article.

On March 18, 1999, MIA noted this appeal.

## DISCUSSION

MIA argues that the issue before us is one of statutory interpretation. It argues that, in accordance with Health–Gen. §§ 19–710.1 and 19–712.1, MD–IPA is required to pay claims submitted by health care providers for all medically necessary services rendered within thirty days after receipt of the claim, regardless of whether responsibility for payment of the claim is at issue in a pending workers' compensation case. According to MIA, §§ 19–710.1 and 19–712.1 are clear and unambiguous and contain no language expressly or impliedly creating any exclusion for workers' compensation claims. The Legislature could have and would have expressly provided such an exclusion, according to MIA, if the Legislature so desired.

Further, MIA maintains that the term "payable," as used in an exclusion contained in MD–IPA's health plan which excludes the cost of services "payable by Workers' Compensa-

tion," applies only when there is an obligation to pay as determined by an award of the Workers' Compensation Commission. MIA notes that the Workers' Compensation Commission has exclusive jurisdiction to determine when a workplace injury is compensable. Finally, MIA contends that MD–IPA's dispute concerning the identity of the proper payor of a claim is not a good faith dispute concerning the legitimacy of the claim or the appropriate amount of reimbursement and, thus, does not fall within any of the exceptions to the prompt payment requirement.

MD–IPA argues that the circuit court made the proper decision, because the relevant statutes required payment of claims only for covered services. MD–IPA maintains that any services rendered to members that are payable by workers' compensation are specifically excluded from coverage and, consequently, not subject to the statutory thirty-day payment requirement. We agree with MD–IPA and affirm the circuit court's decision.

A. *Standard of Review.*

Our standard of review of administrative decisions was set out at length in *White v. North,* 121 Md.App. 196, 708 A.2d 1093, *cert. granted,* 351 Md. 7, 715 A.2d 965 (1998):

Our role in reviewing an administrative decision "is precisely the same as that of the circuit court." This means we must review the administrative decision itself.

In its judicial review of an agency's action, a court may not uphold an agency decision unless it is sustainable on the agency's actual findings and for reasons advanced by the agency in support of its decision. In reviewing the decisions of administrative agencies, the court must accept the agency's findings of fact when such findings are supported by substantial evidence in the record.

In assessing whether the Board's decision is supported by substantial evidence, we apply the rule that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In other

words, the scope of review "is limited 'to whether a reasoning mind could have reached the factual conclusion the agency reached.' "

We must review the agency's decision in a light most favorable to the agency, since "decisions of administrative agencies are *prima facie* correct." In applying the substantial evidence test, we do not substitute our judgment for the expertise of the agency, for the test is a deferential one, requiring " 'restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions'." This deference applies not only to agency fact-finding, but to the drawing of inferences from the facts as well. "Where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences." When the agency's decision is predicated solely on an error of law, however, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency.

*Id.* at 219–21, 708 A.2d 1093 (citations omitted).

The issues before us are issues of law.

### B. *Statutory Interpretation.*

▮▮▮▮ The cardinal rule of statutory interpretation is to ascertain and give effect to the intention of the Legislature. *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887 (1999); *Wesley Chapel v. Baltimore,* 347 Md. 125, 137, 699 A.2d 434(1997). "Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Degren,* 352 Md. at 417, 722 A.2d 887. If "the words of the statute are susceptible to more than one meaning, it is necessary to consider their meaning and effect 'in light of the setting, the objectives and [the] purpose of the enactment.' " *Wesley Chapel,* 347 Md. at 137, 699 A.2d 434 (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986) (alteration in original)). Therefore, we construe the statute as a whole and interpret each of its provisions in the context of the entire statutory scheme.

*Blondell v. Baltimore Police Dept.*, 341 Md. 680, 691, 672 A.2d 639 (1996). The Court of Appeals has stated:

> If the language alone does not provide sufficient information on the Legislature's intent, then courts will look to other sources to discern the Legislature's purpose.... Because the meanings of even common words may be context-dependent, ... we often proceed to consider other external manifestations of legislative intent, such as the amendment history of the statute, its relationship to prior and subsequent law, and its structure.

*Armstead v. State*, 342 Md. 38, 56, 673 A.2d 221 (1996) (internal quotation marks and citations omitted).

 Finally, "[c]ommon sense must guide us in our interpretation of statutes, and 'we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.'" *Marriott Employees Federal Credit Union v. Motor Vehicle Administration*, 346 Md. 437, 445, 697 A.2d 455 (1997)(quoting *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106 (1994)).

## C. §§ *19–710.1 and 19–712.1.*

We agree with MIA that the statutes are clear and susceptible of but one interpretation, but we do not reach the same conclusion as MIA. Sections 19–710.1 and 19–712.1 expressly require HMOs to pay health care providers for covered services within thirty days after receipt of a claim. Section 19–710.1(b) states in pertinent part that:

> for a covered service rendered to an enrollee or a health maintenance organization by a health care provider not under written contract with the health maintenance organization, the health maintenance organization or its agent: (i)[s]hall pay the health care provider within 30 days after receipt of a claim[.]

§ 19–710.1(a)(3) defines a "covered service" as:

> a health care service included in the benefit package of the health maintenance organization and rendered to an enrollee of the health maintenance organization by a health care

provider, including a physician or hospital not under written contract with the health maintenance organization.

With respect to health care providers under contract with an HMO, § 19–712.1 contains a similar provision, and provides that "[f]or covered services rendered to its members, a health maintenance organization shall reimburse any provider within 30 days after receipt of a claim that is accompanied by all reasonable and necessary documentation."

The statutes require payment within thirty days only for "covered service[s]." As appellee notes, "Covered service" is defined statutorily as "a health care service included in the benefit package of the [HMO] ... "

In the case *sub judice*, MD–IPA's health plan provides that "[t]he cost of any services rendered to members which are payable by Workers' Compensation" are specifically excluded from coverage. Consequently, we conclude that services rendered for workplace injuries "payable by Workers' Compensation" are not covered services.

The dispositive question then becomes what is meant by "payable" within the meaning of the health plan. We are guided by cases involving analogous Maryland Workers' Compensation issues. First, we note that liability to make workers' compensation payments is fixed at the time of the accident. *Cooper v. Wicomico County Dept. of Public Works*, 278 Md. 596, 600–01, 366 A.2d 55 (1976); *Cline v. Mayor and City Council of Baltimore*, 13 Md.App. 337, 343, 283 A.2d 188 (1971). Second, in *Sears, Roebuck v. Ralph*, 340 Md. 304, 314–15, 666 A.2d 1239 (1995), the Court of Appeals held that "compensation payable" as used in the non-abatement provision of Workers Compensation Act, Art. 101, § 36(4)(c) [now Labor & Employment § 9–646], is not limited to an award but instead means legally payable under the Workers' Compensation Act due to the occurrence of a compensable injury. We believe that holding is applicable to the situation before us.

Appellee relies on several cases from other jurisdictions. Most of the cases are neither on point nor particularly helpful,

albeit not inconsistent with our conclusion. We do find two cases instructive and supportive of our conclusion. In *Bonney v. Citizens' Mutual Automobile Insurance Co.*, 333 Mich. 435, 53 N.W.2d 321 (1952), the Supreme Court of Michigan considered the language in an automobile insurance policy with medical payments coverage that excluded payments "payable under any Workmen's Compensation law." The court held that the term "payable" was unambiguous and that an award by the compensation commission was not required for the exclusion to be applicable. *Id.* at 324. In *Wise v. American Casualty Company of Reading, Pa.*, 117 Ga.App. 575, 161 S.E.2d 393 (1968), the court had before it a policy providing hospitalization insurance benefits which contained an exclusion for loss "payable" by worker's compensation. The court held that it did not require actual payment, only statutory liability for payment.

Based on the principle that payable means legally payable, and that such liability arises at the time of the accident, we conclude that the circuit court was correct in holding that the claims herein were payable by workers' compensation, prior to any award by the Commission. They were not covered services, and thus, not subject to the thirty-day payment provisions contained in §§ 19–710.1 and 19–712.1.

### D. *Good Faith Exception.*

MD–IPA argues that the question whether the claim is payable by the HMO or through workers' compensation amounts to a good faith dispute that falls within the statutory exception to the payment requirement. The exception to the thirty day prompt payment requirement appears in Section 19–712.1, which states in pertinent part:

(c) The provisions of this section do not apply to claims where:

(1) There is a good faith dispute regarding:

(i) The legitimacy of the claim; or

(ii) The appropriate amount of reimbursement[.]

MD–IPA argues that the General Assembly intended this section to apply to a dispute relating to the medical necessity of treatment rather than to disputes relating to which insurer is the proper payor. We disagree.

A statement of the legislative purpose of the statute, as articulated by its sponsor, was provided to us by the parties. It appears that the purpose was to require prompt payment when liability and amount were reasonably clear —— not when there is a good faith dispute regarding either. Delegate Lawrence A. LaMotte, the sponsor of the legislation, House Bill 416, 1991 Md. Laws ch. 188, Health Maintenance Organizations—Prompt Payment of Claims, explained:

> Maryland law provides for the prompt payment of claims "whenever liability and amount are reasonably clear" within thirty days of the proper filing of a claim for non-profit health service plans, individual health service contracts and group health insurance contracts, but provides no specific provision requiring HMOs to pay their bills in a timely manner.

Delegate LaMotte further explained that the legislation would make HMOs subject to the prompt payment requirement but that the provision would not apply when a good faith dispute existed regarding the legitimacy of the claim or the appropriate amount of reimbursement. We see nothing in the statute or its history that causes us to interpret it as being limited to issues of medical necessity. To the contrary, the legislative history indicates that the exception applies whenever there is a good faith dispute regarding liability or amount of payment. We construe the statute in that manner, which would include a good faith dispute as to the identity of the proper payor.

E. *Conclusion.*

■ An HMO has the right to delay payment of a medical provider's claim based on a pending workers' compensation claim. If it is ultimately determined that the claim is covered by the health plan, however, an HMO will be in violation of the

prompt payment provisions unless it demonstrates that it investigated the claim and came to a good faith conclusion that the claim was not covered.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**