795 A.2d 124

James G. **BENNETT**

v.

**STATE DEPARTMENT OF ASSESSMENTS AND TAXATION.**

No. 2217, September Term, 2000.

Court of Special Appeals of Maryland.

Nov. 1, 2001.

Reconsideration Denied Dec. 31, 2001.

358

James G. Bennett of Silver Spring, for appellant.

David M. Lyon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on brief) Baltimore, for appellee.

Submitted before HOLLANDER, JAMES R. EYLER and SONNER, JJ.

HOLLANDER, Judge.

In this case, we must determine whether a mortgage securing a homeowner's primary residence constituted a liability for purposes of calculating the homeowner's "net worth" and eligibility for a Homeowner's Tax Credit. Pursuant to Md. Code (1986, 1994 Repl.Vol.), § 9–104 of the Tax–Property Article ("T.P."), James Bennett, appellant, *pro se,* applied for a Homeowners' Tax Credit for the 1996 tax year, based on his income and net worth for calendar year 1995. The State Department of Assessments and Taxation ("SDAT"), appellee, rejected Bennett's application on the ground that he failed to satisfy the statutory criteria as to net worth. SDAT reached that conclusion because it did not consider the mortgage for Bennett's primary residence as a liability. The Maryland Tax Court upheld that determination on October 27, 1999, and, by order dated September 19, 2000, the Circuit Court for Montgomery County affirmed.

On appeal, appellant presents several questions for our review, which we have combined and rephrased:

In calculating appellant's net worth to determine his eligibility for a Homeowners' Tax Credit, did the Tax Court err in excluding as a liability the mortgage balance on appellant's home?

For the reasons that follow, we shall affirm.

## FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND

T.P. § 9–104 establishes a property tax credit for eligible homeowners, known as a Homeowner's Tax Credit ("HTC"), by which a portion of the homeowner's tax bill is absorbed by the State. Eligibility for the tax credit depends upon several factors, including the applicant's net worth as of the year preceding the request. T.P. § 9–104(i) disqualifies an applicant for the HTC if the applicant's net worth exceeds $200,000. T.P. § 9–104(i) provides, in part:

A property tax credit under this section may not be granted to a homeowner whose combined net worth exceeds

$200,000 as of December 31 of the calendar year that precedes the year in which the homeowner applies for the property tax credit.

Net worth is defined in T.P. § 9–104(a)(12) as "the sum of the current market value of all assets, less any outstanding liability." But, for purposes of calculating net worth, T.P. § 9–104(a)(2) excludes "the dwelling for which the property tax credit is sought" from consideration as an asset. The statute does not address whether any corresponding mortgage or debt is omitted from consideration as a liability. Nor is the term "liability" specifically defined in the statute. ' Nevertheless, because the taxpayer's primary residence is not considered as an asset in the calculation of net worth, SDAT has consistently excluded the mortgage liability on the corresponding dwelling from the calculation of net worth. That position is at issue here.

Under T.P. § 9–104, appellant applied for an HTC for the tax year 1996, based on his income and net worth for calendar year 1995. In order to determine Bennett's eligibility, SDAT calculated his net worth. In doing so, SDAT excluded the value of appellant's home as an asset. Consequently, SDAT also excluded as a liability the mortgage balance on that home. SDAT subsequently rejected Bennett's application because, based on its calculations, his combined net worth exceeded $200,000, which disqualified him from obtaining the HTC under the net worth test in T.P. § 9–104(i).

Bennett maintained that, in its net worth calculation, SDAT properly excluded his home as an asset, but erroneously excluded as a liability his outstanding mortgage balance on that home. Had SDAT included the mortgage liability, the parties agree that appellant's net worth would have fallen below the $200,000 statutory threshold.

Bennett appealed SDAT's decision to the Maryland Tax Court, reiterating that his mortgage balance should have been included as a liability in the net worth calculation. Although the Maryland Tax Court found some ambiguity in the statute, it noted that exemptions from taxation are strictly construed

in favor of the State. The Tax Court was of the view that if a dwelling is not considered as an asset for purposes of calculating net worth, it made no sense to include in the calculation, as a liability, the mortgage on that same home. The Tax Court reasoned: "There's no rational way to allow you to eliminate the assets as part of the net worth calculation but still include the liability on that." Further, the Tax Court said:

Based on the standard that we have to work with and what I would consider a reasonable interpretation of what net worth is, if you exclude the home [as an asset,] you have to not count the liability on the home at the same time.

The circuit court subsequently affirmed. It stated, in relevant part:

There's no dispute in this case that the only issue was the proper calculation of the net worth of the Petitioner, and therefore this is a decision of law. And the Court is really looking to see whether, in this Court's opinion, the Tax Court made an error of law.

We looked at Tax Property Article, Section 9–104. "Eligibility for the credit is determined by gross income and net worth, both of which are calculated to determine the applicant's ability to pay the tax that's otherwise due.["]

"The statute excludes the home as an asset in calculation of net worth."

And this was the basis of SDAT's position that both the value of the home and the mortgage thereon, are excluded from the calculation of net worth under the statute.

This Court is going to find that this position is supported by the language and intent of the statute, the legislative history, and also the longstanding administrative practice of SDAT.

Courts have considered tax credits similarly to exemptions and have specifically held that the rules of strict statutory construction for exemptions are equally applicable to tax credits.

The burden of persuasion is placed on the applicant to show affirmatively that the alleged exemption or credit has been clearly allowed by law.

\* \* \*

Since this is a credit created by statute, the statute also defines the eligibility criteria, which can be generally described as being based on income and the assets available to pay the applicant's property taxes.

The legislative intent is also available to the Court to assist the Court in determining what the purpose of the legislative [sic] is meant to accomplish, and this Court finds, based on what's presented in the record, that the intent of this statute was to assist those who did not have the financial ability to pay, by measuring the financial ability as represented by the net worth of the particular applicant.

The statutory definition of assets specifically excludes the residence that is the subject of the credit application.

\* \* \*

Finally, case law does direct this court to give great deference to the manner in which a statute is implied [sic] and interpreted by the agency that is charged with carrying it out.

\* \* \*

I am going to find that the Tax Court did not err as a matter of law, and I will affirm the decision of the Tax Court.

## DISCUSSION

### I.

Appellant disputes the way in which SDAT calculated his net worth. Although the primary residence is not considered as an asset under T.P. § 9–104(a)(2) for purposes of calculating net worth, appellant argues that the outstanding mortgage for that same dwelling should have been included as a liability for purposes of calculating net worth. Therefore, he complains that the Tax Court erred by excluding his mortgage

liability in the calculation of net worth. As we noted, the parties agree that if SDAT had included Bennett's mortgage as a liability, his net worth would have been less than $200,000. Conversely, they agree that appellant's net worth exceeds the $200,000 threshold if his mortgage liability is omitted from the net worth calculation.

Appellant asserts: "[T]he basic disagreement in the case is the nature of the relationship between a dwelling and the indebtedness secured by the dwelling. Disagreement arises in the calculation of a net worth limitation because the Statute excludes the dwelling for which the tax credit is sought since the dwelling is **not** an 'Asset'!" Bennett adds: "[T]wo perspectives of the statutory language have arisen with respect to how the liability for a debt relates to a dwelling, *when the dwelling is used as security for payment of that debt.*" Moreover, appellant contends that the statute "does not exclude any liabilities in this calculation. . . ." He urges that the "security is **collateral** to the debt—**not lineal.** The debt exists regardless of whether or not there is security given."

We begin our analysis with a review of the principles that govern judicial review of an administrative agency's decision. We recently discussed these principles in *Rouse–Fairwood Development Limited Partnership v. Supervisor of Assessments for Prince George's County,* 138 Md.App. 589, 617–618, 773 A.2d 535, *cert. denied,* 365 Md. 475, 781 A.2d 780 (2001). *See also Rouse–Fairwood Limited Partnership v. Supervisor of Assessments of Prince George's County,* 120 Md.App. 667, 684–89, 708 A.2d 19 (1998).

The Maryland Tax Court is an administrative agency. *See* Md.Code (1988, 1997 Supp.), § 3–102 of the Tax–General Article ("T.G."); *Supervisor of Assessments of Baltimore County v. Keeler,* 362 Md. 198, 207, 764 A.2d 821 (2001); *State Dep't of Assessment and Taxation v. North Baltimore Ctr., Inc.,* 361 Md. 612, 616 n. 5, 762 A.2d 564 (2000); *Read v. Supervisor of Assessments of Anne Arundel County,* 354 Md. 383, 391, 731 A.2d 868 (1999). On appeal from a decision of that court, our role is the same as the circuit court; we review

the agency's decision. *Ahalt v. Montgomery County,* 113 Md.App. 14, 20, 686 A.2d 683 (1996); *Maisel v. Montgomery County,* 94 Md.App. 31, 34, 614 A.2d 1333 (1992). The scope of judicial review of an agency's decision is very limited. *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67, 729 A.2d 376 (1999); *CBS, Inc. v. Comptroller of the Treasury,* 319 Md. 687, 697–98, 575 A.2d 324 (1990); *Brown v. Comptroller of the Treasury,* 130 Md.App. 526, 531, 747 A.2d 232 (2000). A decision of the Tax Court is considered *prima facie* correct, and is reviewed "in the light most favorable to that court." *Maisel,* 94 Md.App. at 34, 614 A.2d 1333. It must be affirmed if it " 'is not erroneous as a matter of law' " and is " 'supported by substantial evidence appearing in the record.' " *CBS, Inc. v. Comptroller,* 319 Md. at 697–98, 575 A.2d 324 (quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296 (1985)).

Moreover, "a reviewing court ... must not itself make independent findings of fact or substitute its judgment for that of the agency." *Blackburn v. Board of Liquor License Commissioners for Baltimore City,* 130 Md.App. 614, 623–24, 747 A.2d 725 (2000); *see also Maryland Insurance Administration v. Maryland Individual Practice Association, Inc.,* 129 Md.App. 348, 355, 742 A.2d 22 (1999). As we explained in *Blackburn:*

" 'Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reason stated by the agency.' "

*Blackburn,* 130 Md.App. at 624, 747 A.2d 725 (citations omitted).

Notwithstanding the deference accorded to an agency's factual determinations, the agency's resolution of legal

issues is not binding on the reviewing court and receives no deference. *State Dep't of Assessments & Taxation v. Consumer Programs, Inc.,* 331 Md. 68, 72, 626 A.2d 360 (1993). Instead, we review, *de novo,* an agency's legal conclusions. *See Maryland State Dep't of Educ. v. Shoop,* 119 Md.App. 181, 197, 704 A.2d 499, *cert. denied,* 349 Md. 495, 709 A.2d 140 (1998). This means that the substituted judgment standard applies to the Tax Court's legal analysis, including its interpretation of statutory provisions. *See State Dep't of Assessments and Taxation v. North Baltimore Center, Inc.,* 129 Md.App. 588, 595, 743 A.2d 759, *aff'd.,* 361 Md. 612, 762 A.2d 564 (2000); *Rouse–Fairwood Limited Partnership,* 120 Md.App. at 685, 708 A.2d 19; *Papillo v. Pockets, Inc.,* 119 Md.App. 78, 83, 704 A.2d 448 (1997).

Because we must review the Tax Court's statutory interpretation, including its construction of the term "net worth," we pause to set forth the seminal principles of statutory construction that frame our analysis.

The interpretation of a statute is a judicial function. *Muhl v. Magan,* 313 Md. 462, 545 A.2d 1321 (1988); *Stavely v. State Farm Mutual Automobile Ins. Co.,* 138 Md.App. 1, 9, 769 A.2d 1008 (2001). Our primary goal in construing a statute is to ascertain and effectuate the intent of the Legislature. *Board of License Comm'rs v. Toye,* 354 Md. 116, 122, 729 A.2d 407 (1999); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995); *Mayor of Baltimore v. Cassidy,* 338 Md. 88, 93, 656 A.2d 757 (1995). We are guided in this endeavor by the statutory text. *Huffman v. State,* 356 Md. 622, 628, 741 A.2d 1088 (1999); *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339 (1996).

We give the words of the statute their ordinary meaning. *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128 (1998); *Gardner v. State,* 344 Md. 642, 647–48, 689 A.2d 610 (1997); *Maryland–Nat'l Capital Park & Planning Comm'n. v. State Dep't of Assessments & Taxation,* 110 Md.App. 677, 688, 678 A.2d 602 (1996), *aff'd.,* 348 Md. 2, 702 A.2d 690 (1997). If the statute is free of ambiguity, we generally will not look

beyond the statute to determine legislative intent. *Maisel*, 94 Md.App. at 37, 614 A.2d 1333; *State Dep't of Assessments and Taxation v. Glick*, 47 Md.App. 150, 157, 422 A.2d 34 (1980). Nevertheless, we do not ignore the intent of the Legislature if it is readily known. *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 516, 525 A.2d 628 (1987).

On the other hand, when a term or provision is ambiguous, we consider not only the literal or usual meaning of the statutory language, but also its "meaning and effect in light of the setting, the objectives and purpose of the enactment." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986); *see Kaczorowski*, 309 Md. at 513, 525 A.2d 628. We may also "consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hosp. of Baltimore, Inc. v. Department of Employment & Training*, 309 Md. 28, 40, 522 A.2d 382 (1987); *Tucker*, 308 Md. at 75, 517 A.2d 730; *see also Romm v. Flax*, 340 Md. 690, 693, 668 A.2d 1 (1995); *Maryland Auto. Ins. Fund v. Erie Ins. Exch.*, 105 Md.App. 377, 386, 660 A.2d 929 (1995).

When the Legislature fails to define a particular statutory term, we first look to the plain meaning of the term, and give that language its "ordinary and natural meaning [without] resort to subtle or forced interpretations . . ." *Maryland–Nat'l Capital Park & Planning Comm'n v. Department of Assessments & Taxation*, 110 Md.App. 677, 689, 678 A.2d 602 (1996), *aff'd.*, 348 Md. 2, 702 A.2d 690 (1997); *see also Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994). In deciding the plain meaning of a statutory term or phrase, however, we may consult the dictionary. *Department of Assessments & Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n*, 348 Md. 2, 14, 702 A.2d 690 (1997); *Rossville Vending Mach. Corp. v. Comptroller of the Treasury*, 97 Md.App. 305, 316, 629 A.2d 1283, *cert. denied*, 333 Md. 201, 634 A.2d 62 (1993). But, even under the plain meaning rule, we do not ignore the Legislature's purpose if it

is readily known. *Pagano,* 341 Md. at 133, 669 A.2d 1339; *Kaczorowski,* 309 Md. at 516, 525 A.2d 628.

In general, when analyzing a statute, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994). A statute must be read as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. *Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93 (1994); *Condon v. State* 332 Md. 481, 491, 632 A.2d 753 (1993). We "give every word effect, avoiding constructions that render any portion of the language superfluous or redundant." *Blondell v. Baltimore City Police Dept.,* 341 Md. 680, 691, 672 A.2d 639 (1996); *see also Warsame v. State,* 338 Md. 513, 519, 659 A.2d 1271 (1995).

In our effort to effectuate the Legislature's intent, we also may consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.,* 358 Md. 129, 135, 747 A.2d 625 (2000) (citation omitted). But, we may not read a meaning into the statute that is not expressly stated or clearly implied. Nor may we embellish a statute to expand its meaning. *Department of Econ. & Employment Dev. v. Taylor,* 108 Md.App. 250, 277–78, 671 A.2d 523 (1996), *aff'd.,* 344 Md. 687, 690 A.2d 508 (1997).

Bennett does not contest that SDAT has consistently excluded the home as an asset or a liability in its calculation of net worth. In construing a statute, we "ordinarily give some weight to the construction given the statute by the agency responsible for administering it." *Magan v. Medical Mut. Liab. Ins. Soc'y of Md.,* 331 Md. 535, 546, 629 A.2d 626 (1993); *see Mayberry v. Board of Educ. of Anne Arundel County,* 131 Md.App. 686, 700, 750 A.2d 677 (2000). " 'It is well settled that the construction of a law by the agency charged with its enforcement, acquiesced in by the legislature, is entitled to great weight and should not be disregarded

except for the strongest and most urgent reasons.' " *Jackson Marine Sales, Inc. v. State Dep't of Assessments and Taxation*, 32 Md.App. 213, 217, 359 A.2d 228, *cert. denied*, 278 Md. 725 (1976) (interpreting a property tax exemption and quoting *Public Serv. Comm'n v. Howard Res.*, 271 Md. 141, 152, 314 A.2d 682 (1974)).

Appellant argues that because of the differences in the calculation of exemptions and credits, the strict construction used in the interpretation of tax exemptions is not necessarily applicable to tax credits. For that proposition, he relies on *Comptroller of the Treasury v. The Mandel, Lee, Goldstein, Burch Re Election Committee*, 280 Md. 575, 374 A.2d 1130 (1977), which concerned a tax levy, not a tax credit. We agree with SDAT that T.P. § 9–104, which concerns homeowner tax credits, is subject to strict construction.

As the Court of Appeals said in *State Department of Assessments and Taxation v. Belcher*, 315 Md. 111, 119, 553 A.2d 691 (1989): "Although tax exemptions and tax credits can be distinguished in their manner of operation, their effect on the state is the same: a reduction in the amount of revenues passing to the state." In acknowledging that the rule of strict construction is "applicable when tax credits are implicated," *id.*, the Court further stated:

> *It is a firmly established principle of law that exemptions from taxation are not favored, but are strictly construed in favor of the State....* Therefore, before any claimant can obtain an exemption, it is encumbent [sic] upon him to show affirmatively that the alleged exemption has been clearly allowed by law. If there is a real doubt upon the subject, that doubt must be resolved in favor of the State. It is only where the deliberate purpose of the Legislature to grant an exemption is expressed in clear and unequivocal terms that a claim to an exemption can be maintained.

*Id.* at 118, 553 A.2d 691 (citation omitted) (emphasis added). The *Belcher* Court also said that "an exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the exemption law." *Belcher*, 315 Md. at 118,

553 A.2d 691 (citation omitted). Thus, "to doubt an exemption is to deny it." *Id.* at 117, 553 A.2d 691.

## II.

T.P. § 9–104(a)(12) defines the term "net worth" as "the sum of the current market value of all assets, less any outstanding liability." Thus, the statutory definition of "net worth" is composed of two elements—assets and liabilities. The term or concept of "assets" is not defined in the statute. Instead, the statute sets forth a variety of investments that constitute "assets," including real property, cash, stocks, bonds, and savings accounts. T.P. § 9–104(a)(2)(i)(1–6). On the other hand, T.P. § 9–104(a)(2)(ii)(1) expressly provides that the "dwelling for which a property tax credit is sought under this section" does not constitute an asset for purposes of the HTC. Nor does the statute define the term "liability." Moreover, the statute does not expressly exclude from the net worth calculation the mortgage pertaining to the dwelling that, by statute, is not considered as an asset in the net worth calculation.

Appellant contends that the statute is not ambiguous in regard to the calculation of net worth, or in specifying how "a mortgage liability is to be handled!" In essence, appellant argues that the statutory exclusion of the dwelling as an asset is independent of the mortgage for that dwelling. Moreover, although SDAT construed the statute in an entirely different way than did appellant, SDAT agrees with Bennett that statute is not ambiguous. As we see it, when we consider the Legislature's intent and apply the principles of statutory construction regarding logic and common sense, as well as the plain meaning of net worth, we readily conclude that the exclusion of the home as an asset compelled the exclusion of the mortgage as a liability for purposes of calculating appellant's net worth.

As we previously indicated, "when the Legislature fails to define a statutory term, we ordinarily apply its plain meaning, consistent with the Legislature's intent and purpose." *Rouse–Fairwood,* 120 Md.App. at 689, 708 A.2d 19. We may refer to

dictionary definitions of the terms in question, and draw upon common sense. *See Frost*, 336 Md. at 137, 647 A.2d 106; *Rouse*, 120 Md.App. at 687–88, 708 A.2d 19.

"Liability" is commonly defined as a debt or a pecuniary obligation. *Merriam Webster's Collegiate Dictionary* 670 (10th ed.1997). A "mortgage" is defined as "[a] conveyance of or lien against property that is defeated upon payment or performance according to stipulated terms." *Id.* at 758. Moreover, "assets," are defined in Webster's II, New River-side University Dictionary 131 (1994), to include the "entries on a balance sheet showing all properties and claims ... that may be directly or indirectly applied to cover liabilities." Although, by statute, the subject dwelling is not counted as an asset for purposes of the HTC, a zebra cannot shed its stripes. That the subject dwelling is not treated as an asset for purposes of the HTC does not mean it is not an asset for other purposes. Moreover, the value of an asset cannot be established without taking into account the amount of any debt or liability attached to it. These concepts comport with the popular understanding of the terms.

As we see it, because the statute excludes the subject dwelling from consideration as an asset in calculating net worth, consideration of the mortgage for that same property is necessarily also excluded from consideration. The mortgage liability is an integral component of the concept of the home as an asset. If the home is not considered as an asset, it would make no sense to include the mortgage as a liability in the net worth calculation.

Moreover, as we observed, we are entitled to consider the "meaning and effect" of the statutory terms in the context of "the objectives and purpose of the enactment." *Rouse–Fairwood*, 120 Md.App. at 688, 708 A.2d 19. SDAT asserts: "The ultimate purpose of this [HTC] tax relief is to protect those meeting the eligibility criteria from being taxed out of their home. Therefore, the home is excluded from the net worth calculation because that value is not available to pay the tax on itself." Because the home is not considered as an asset for

purposes of calculating net worth, the market value of the home does not affect the calculation of net worth. In this way, applicants for the HTC are not disqualified on the basis of the appreciation in fair market value of a home that perhaps was purchased years earlier. The home, after all, cannot pay the taxes.

SDAT's position is supported by the Legislature's intent. As the Editor's Note to T.P. § 9–104 indicates, the purpose of the calculation of net worth is "undertaken in order to provide a measure of the homeowner's ability to pay a tax which, but for the statutory credit, would otherwise be due and owing." T.P. § 9–104. We are satisfied that the same rationale applies to the exclusion of the subject dwelling as both an asset and a liability.

The legislative intent of T.P. § 9–104 is further elucidated by reference to the predecessor statute, Md.Code (1957, 1980 Repl. Vol.), Art. 81, § 12F–1. The Revisor's Note indicates that the relevant portions of former Article 81, § 12F–1 were recodified in T.P. § 9–104 "without substantive change." Laws of Maryland 1985, Chapter 8, Revisor's Note to § 9–104. It defined net worth as

the sum of the values of assets including but not limited to cash, savings accounts, stocks, bonds, and other investments less outstanding liabilities in addition to the excess of current market value of real property, other than the dwelling for which application for the tax credit is made, over the outstanding indebtedness of each such property.

Under the predecessor statute, a mortgage was included as a liability. Pursuant to Article 81, § 12F–1, the value of the property and the debt thereon were interconnected, and the calculation of net worth excluded the dwelling for which a tax credit was sought, as well as the corresponding liability. Therefore, the Legislature expressly excluded from net worth the market value and liability on the subject property.

Although the current statute does not expressly exclude the liability on the subject dwelling from the determination of net worth, our interpretation of the statute is in full

accord with the predecessor statute. Moreover, "[a] change in the phraseology of a statute as part of a recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Office and Professional Employees International Union, Local et. al. v. Mass Transit Admin.*, 295 Md. 88, 100, 453 A.2d 1191 (1982)(citing *Bureau of Mines v. George's Creek,* 272 Md. 143, 155, 321 A.2d 748 (1974)).

SDAT cogently suggests that appellant's position "would give a clear advantage to the wealthy, which certainly is not within the spirit or letter of this statute." As SDAT observes, "[a] computation that only includes the liability of the mortgage balance would not determine one's ability to pay taxes as measured by net worth, but rather would just offset and shelter other available assets up to the amount of the mortgage balance. Accordingly, appellant's position would convert the fixed $200,000 net worth criterion of T.P. § 9–104(i) to $200,000 *plus* any outstanding mortgage balance and effectively create a shelter advantageous to the rich."

SDAT's illustrations underscore the logic of its position. Appellee states: "The owner of a more valuable home has the potential for a larger mortgage. If the mortgage balance can act as a subtraction to offset the value of all other assets, then that larger mortgage balance would be able to offset more of the applicant's assets and allow him to meet the criteria for the credit. As an example, if a homeowner can get a 75% mortgage on a $1 million dollar home, he would be able to offset $750,000 of other assets." In contrast, an applicant with a $100,000 home could offset only $75,000 of other assets. SDAT adds that the subtraction of the mortgage balance on appellant's home from his net worth would clearly undermine the legislative objective. We are confident that the Legislature did not intend that result.

Appellant urges that assets acquired with the proceeds of a home equity loan should also be excluded from the calculation of net worth. Appellee correctly notes that this issue was not raised by the appellant in the Tax Court, and

therefore the circuit court declined to consider it. Nor is it properly before us; our review is limited by the agency record. *Blackburn*, 130 Md.App. at 624, 747 A.2d 725.[1]

In sum, Bennett's position flies in the face of the legislative objective of protecting people "from being taxed out of their home." The goal of the net worth test is not to ensure the best financial position for the mortgage holder. Rather, it is to measure the taxpayer's ability to pay the tax. The Legislature sought to create a connection between the value of the real property and the outstanding indebtedness on such property. That objective is not advanced by appellant's argument.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

1. We observe that the suggested exclusion of assets purchased with the proceeds of the mortgage would result in the significant understatement of assets, since it would lead to the exclusion of both the dwelling, which is mandated by T.P. § 9–104(a)(2), and of assets purchased with the proceeds of the mortgage.