**Gen. 225 ]**            **225**

## TAXATION

**PROPERTY TAX – APPLICABILITY OF HOMESTEAD TAX CREDIT TO SPECIAL BENEFIT DISTRICT TAXES**

December 19, 2014

*The Honorable Steven R. Schuh*
*County Executive*

Your predecessor asked our opinion on the applicability of the Homestead Tax Credit to certain types of "special taxing districts" in Anne Arundel County. The Homestead Tax Credit is provided by State law, and it operates to cap the amount by which a homeowner's property taxes rise from year to year. *See* Md. Code Ann., Tax-Property ("TP") § 9-105 (2012 Repl. Vol., 2014 Supp.); *see also* 1977 Md. Laws, ch. 959 (preamble). Homeowners may take advantage of this credit when paying their "State, county, and municipal . . . property tax[es]." TP § 9-105(b)(1); *see also* TP § 9-105(b)(2), (g).

Former Executive Neuman asked whether the taxes imposed in three particular categories of special taxing districts within Anne Arundel County—Special Community Benefits Districts, Shore Erosion Control Districts, and Waterways Improvement Districts—qualify as county or municipal property taxes such that homeowners within those districts would be eligible for the Homestead Tax Credit against those taxes. According to the request, this issue arose when Anne Arundel County officials asked the County Attorney whether they should grant the Homestead Tax Credit to otherwise eligible homeowners on their special district tax bills. The County Attorney advised that they should not. Memorandum from Lori L. Blair, Senior Assistant County Attorney, to Richard Drain, Controller (March 21, 2013) ("County Attorney Opinion").

For the reasons discussed below, we agree with the County Attorney. The statutory definitions of "county tax" and "municipal tax" and the legislative history of the Homestead Tax Credit indicate that the General Assembly never intended the credit to apply to special taxes imposed to fund local infrastructure improvements or special services that provide special benefits to the property owners within the district. As we understand them, the special taxing districts about which your predecessor asked were created to fund local improvements or

services that specially benefit the property owners who pay taxes to the district. Therefore, the taxes imposed on behalf of those districts do not fall within the scope of the credit.

# I

# Background

## A.   *The Homestead Tax Credit*

In the 1970s, property values were skyrocketing, and the property tax assessments on Marylanders' homes were increasing accordingly. As a result, many homeowners had difficulty paying their property taxes. The General Assembly responded to the problem in 1977 by establishing the Homestead Tax Credit, which essentially caps the amount by which the taxable value of an eligible homeowner's principal residence can increase from the previous year. 1977 Md. Laws, ch. 959 (now codified at TP § 9-105). The Legislature first enacted the credit for only a two-year period, 1977 Md. Laws, ch. 959, but then extended it numerous times until 1988, when it was made permanent. *See* 1988 Md. Laws, ch. 776; *see also*, *e.g.*, 1978 Md. Laws, ch. 177, 1982 Md. Laws, ch. 597, 1986 Md. Laws, ch. 854. The express purpose of the credit was to save Marylanders from "the financial hardships of [property tax] assessments which are increasing in a proportion far greater than their incomes."[1] 1977 Md. Laws, ch. 959 (preamble).

The State Department of Assessments & Taxation ("SDAT") administers the program and determines whether individual

---

[1]   We advised in 1977 that the percentage cap on taxable assessment increases created by the Homestead Tax Credit could violate the requirement in Article 15 of the Maryland Declaration of Rights that property taxes be uniformly assessed within a class. 62 *Opinions of the Attorney General* 859 (1977) (citing 62 *Opinions of the Attorney General* 54 (1977)). Although we found that the 1977 law was constitutional because it created only a "temporary lack of uniformity," *id.* at 860, we determined in 1987 that the tax credit—after numerous extensions—had effectively become permanent and, hence, unconstitutional. 72 *Opinions of the Attorney General* 350, 354-55 (1987) (referring to the Homestead Tax Credit as the "Homeowner's Tax Credit"). Since that time, we have continued to advise that there are constitutional problems with the Homestead Tax Credit. *See*, *e.g.*, Letter from Assistant Attorney General Bonnie Kirkland to Del. Galen Clagett (May 20, 2010). There is no need to analyze the constitutionality of the Act to answer the question posed to us.

homeowners are eligible to receive the credit. TP § 9-105(d)(6). Subject to several exceptions, a taxpayer is eligible if she uses the property as her dwelling or principal residence and has lived there for at least six months of the year. *See* TP § 9-105(d) (setting conditions for eligibility); *see also* TP § 9-105(a)(5)-(8) (defining "dwelling," "homeowner," and other relevant terms).

Maryland's standard property tax regime is relatively straightforward. Normally, property taxes are calculated by multiplying the taxable value of a property by the relevant tax rates. When the taxable value of the property goes up, the property owner's tax liability also increases. In Maryland, SDAT appraises the value of a homeowner's property every three years, and any increase in the taxable value is typically phased in over the next three-year period. *See* TP § 8-103. For example, a property that has increased in value from $100,000 to $160,000 since its last appraisal would be assessed at $120,000 in the first year after the new appraisal, $140,000 in the second year, and $160,000 in the third year. The taxpayer would then pay property taxes based on that "phased-in" assessed value. At a hypothetical tax rate of one percent, therefore, the taxpayer would pay $1,200 in year one, $1,400 in year two, and $1,600 in year three.

The Homestead Tax Credit places an additional cap on the amount by which the taxable value of a homeowner's principal residence can increase in any given year when determining an eligible homeowner's "State, county, [or] municipal corporation" real property taxes, as well as "any property tax imposed for a bicounty commission." TP § 9-105(b). The credit works as follows. First, each government unit—the State, a county, or a municipal corporation—establishes its own "homestead cap" for purposes of calculating the taxes owed to that unit.[2] Then, when calculating an eligible homeowner's property taxes, each government unit essentially forgives any taxes that the homeowner would have had to pay on the increased value of the property above the percentage limit established by the unit. *See* SDAT, Maryland Homestead Tax Credit, http://www.dat.state. md.us/sdatweb/homestead.html (last visited Dec. 2, 2014).

---

[2]   The General Assembly has set the State's homestead cap as a ten percent increase over the previous year, but has authorized counties and municipalities to set a lower cap and thereby give eligible homeowners greater tax relief. TP § 9-105(e)(2), (5).

An example is probably the easiest way to understand how this works in practice. We will use the same example discussed above, but will assume also that the relevant county has set its homestead cap at 10 percent and its county property tax rate at 1 percent. In this scenario, the normal phased-in assessment of $120,000 in the first year would represent an increase in taxable value of 20 percent, which exceeds the county's 10 percent homestead cap. As a result, the cap would operate to limit the taxpayer's liability such that she would only pay county property tax on the first $110,000 of her home's assessed value, *i.e.*, only a 10-percent increase over $100,000. She would thus pay only $1,100 in county property taxes in the first year of the phase-in process instead of the $1,200 she would normally have had to pay. In tax parlance, she would receive a credit of $100 from the county.[3]

## B.    *Special Taxing Districts in Anne Arundel County*

As we have previously observed, terms like "special taxing area," "special taxing district," and "assessment district" are often used interchangeably to describe a variety of different entities. *See* 89 *Opinions of the Attorney General* 107, 109 n.4 (2004). As we see it, these entities fall into two broad categories. The first category—which we will refer to as "general taxing districts"—consists of districts that provide the "general benefits" of government and "promise[] nothing to the persons taxed, beyond what may be anticipated from an administration of the laws  for . .

---

[3]    Continuing this hypothetical, the homeowner would then pay tax on $121,000 of the home's value in the second year of the phase-in process (*i.e.*, an increase of ten percent over $110,000) and on $133,100 in year three (an increase of ten percent over $121,000). At a tax rate of one percent, this means the homeowner would pay $1,210 in year two—compared to $1,400 without the credit—and $1,331 in year three—compared to $1,600 without the credit. She would thus receive a credit from the county of $190 in year two and $269 in year three. A similar process would be used to determine the State portion and, if applicable, the municipal corporation portion of homeowner's property tax bill. The precise amount of the credit, however, would likely be different for each jurisdiction depending on its homestead cap and tax rate. Indeed, some local jurisdictions have set their homestead caps at zero percent or close to it. *See* SDAT, County and Municipal Homestead Credit Percentages, http://www.dat.state.md.us/sdatweb/homestead_percent.html (last visited Aug. 18, 2014). Homeowners in these jurisdictions thus receive a comparatively large credit when their property values increase.

. the general public good." *Brooks v. Baltimore*, 48 Md. 265, 269 (1878) (quoting Cooley on Taxation at 416); *see also* 63 *Opinions of the Attorney General* 16, 20 (1978) (quoting *Brooks*).  One type of district that might fall into this category is a quasi-municipal, limited-purpose governmental entity that provides many of the same services that a municipality provides and has substantial fiscal independence from other local governments. *See* 89 *Opinions of the Attorney General* at 109 n.4; Maryland Legis-lative Handbook Vol. 6, at 59-64 (2006), *available at* http://dlslibrary.state.md.us/publications/OPA/H/2006_6.pdf (describing a number of such "quasi-municipal" taxing districts).

The second category of special taxing districts—which we will refer to as "special benefit taxing districts"—consists of designated territories within which special assessments are imposed to fund infrastructure improvements or services that specifically benefit the residents of the district.  89 *Opinions of the Attorney General* at 109 n.4; Maryland Legislative Handbook Vol. 6 at 64; *see also Leonardo v. Board of County Comm'rs of St. Mary's County*, 214 Md. 287, 307 (1957).  Unlike in the general taxing districts described above, the property owner in a special benefit district receives a "special benefit" because "the improvement for which the assessment is levied causes an enhancement of the property's value, with no pecuniary loss suffered by the property owner." *Montgomery County v. Schultze*, 302 Md. 481, 489 (1985); *see also Williams v. Anne Arundel County*, 334 Md. 109, 117 (1994) (stating that a special assessment is a charge levied "upon a limited class of persons . . . who are presumed to be benefited by the improvement over and above the ordinary benefit which the community in general derive[s] from the expenditure of the money") (quoting *Gould v. Mayor & City Council of Baltimore*, 59 Md. 378, 380 (1883)).

"Although special benefit assessments were first utilized to finance certain capital improvements" like roads and sidewalks, they "may also be used to finance the operating expenses . . . for services beneficial to property in an area," such as garbage collection, street cleaning, and security.  *Williams*, 334 Md. at 118; *see also* 84 *Opinions of the Attorney General* 177, 179 (1999).  Courts appear to distinguish these special benefit taxing districts that provide services from the "general taxing districts" described above by focusing on whether the services specifically benefit the property owners within the district "over and above the ordinary benefit which the community in general derive[s]." *Williams*, 334 Md. at 117; *see also* 63 *Opinions of the Attorney*

*General* at 19-23. Although other factors may enter into the analysis, the existence of such a special benefit is the touchstone for determining whether a district has imposed a valid special assessment to fund local services.

Most Maryland counties and municipalities are authorized to levy special assessments by creating special taxing districts that cover a defined geographic area in which all the property owners will benefit from the infrastructure improvements or services funded by the assessments. *See* Md. Code Ann., Local Gov't ("LG") § 10-314(a) (2013 Repl. Vol.) (authorizing charter and code counties to create special taxing districts); *id.* §§ 21-502 through 21-504 (providing additional authority for Anne Arundel County and 11 other counties to create special taxing districts for costs associated with infrastructure improvements); *see generally Victoria Falls Comm. for Truth in Taxation, LLC v. Prince George's County*, 438 Md. 391, 403-04 (2014), reconsideration denied (May 16, 2014). Anne Arundel County, in particular, has a long history of using this type of special taxing district to finance local improvements and services. *See Williams*, 334 Md. at 113-14. Your predecessor asked specifically about three types of special taxing districts within the County: (1) Special Community Benefit Districts; (2) Shore Erosion Control Districts; and (3) Waterways Improvement Districts. *See* Anne Arundel County Code ("County Code") §§ 4-7-201 to 4-7-406.

The County has approximately 18 Shore Erosion Control Districts and 12 Waterways Improvement Districts, all of which fund infrastructure improvements. *See* County Code §§ 4-7-303, 4-7-406; *see also* LG §§ 21-201 through 21-306 (regarding erosion prevention projects and erosion control districts); Md. Code Ann., Nat. Res. § 8-708(c)(ii) (2012 Repl. Vol., 2014 Supp.) (providing authority for special assessment or tax on property within waterways improvement districts). Shore Erosion Control Districts use special assessments to finance the construction and maintenance of bulkheads, revetments, and other erosion control projects, while Waterways Improvement Districts levy special assessments to finance projects like the construction of jetties and the dredging of channels. The County Council may establish one of these districts if 75 percent of the property owners proposed to be included in the district sign a petition in support. County Code §§ 4-7-302(b), 4-7-401(b).

The County's Special Community Benefit Districts are more diverse; some of them fund infrastructure improvements, some fund special services, and some fund a combination of the two.

*See generally* County Code § 4-7-204. The County has approximately 75 such districts, ranging from districts authorized to acquire property for a park, to districts that maintain and improve certain community property and provide special police protection, to a district authorized solely to provide mosquito control. *See*, *e.g.*, County Code § 4-7-204(b), (f), (pp). The County Code specifically provides that it may create one of these districts only if a majority of property owners in a proposed district agree and, even then, only to "furnish and provide special privileges or benefits to persons or property in the district[], and levy special taxes on property in the district[] receiving the special benefit to pay the costs of . . . the special privileges or benefits." County Code § 4-7-202.

As we see it, all three of these districts qualify as special benefit taxing districts, as opposed to general taxing districts, and all three operate in a largely similar fashion. A district typically pays for the local infrastructure improvement or special services (often using bonds), and then a city or county assesses the property owners within that district for their proportionate share of the cost of the improvement (or bond obligations). The district submits to the County Budget Office an annual budget request that includes "a detailed listing of the purposes to which the funds are to be applied" and the rate of the special assessment that will be used to recoup the necessary funds. *Id.* § 4-7-103(a), (b). If the request is approved by the County Executive and County Council, the County Executive includes the appropriation in the budget, and the County Council includes the district's annual tax in an "ordinance of levy for special tax districts." *See Williams*, 334 Md. at 116 (explaining budget process). The special benefit taxes are then collected by the County along with other County property taxes, and the County Controller deposits those funds in a special account. County Code § 4-7-101(g), (h). The funds may only "be spent in the district from which the taxes were collected for the purposes of the district and for the purposes for which appropriations have been made in the budget adopted by the County Council." *Id.* § 4-7-102.

Despite their many similarities, the districts use different methods to calculate the special benefit taxes assessed to each property owner. Some districts assess the special benefit taxes based on the value of their residents' property, the same way that most property taxes are assessed. *E.g.*, County Code §§ 4-7-205, 4-7-304. Other districts assess each property owner the same fixed amount regardless of the value of his or her property. *Id.*

This difference is relevant here because the Homestead Tax Credit—even assuming it applied to taxes imposed by special benefit taxing districts—would have no effect on the tax liability of a homeowner who pays a fixed amount. If the special assessment were set at $100 per year, for instance, homeowners would pay $100 every year even if their property values increase dramatically. The homestead credit's cap would limit the increase in the homeowner's State, county, and municipal taxes, but it would have no effect on the amount of the fixed special assessment. In answering the question put to us, therefore, we need consider only whether the Homestead Tax Credit applies to special district taxes that are levied based on property value.

## II

### Analysis

Your predecessor in office asked whether the Homestead Tax Credit applies to special taxes imposed by three types of special taxing districts in Anne Arundel County. Fundamentally, the question involves the interpretation of a State statute, § 9-105 of the Tax-Property Article. The "ultimate objective of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Maryland Econ. Dev. Corp. v. Montgomery County*, 431 Md. 189, 199 (2013) (citation and internal quotation marks omitted). In doing so here, we "begin with the plain language of the statute," *id.*, but we must "keep in mind the statutory context," *see TransCare Maryland, Inc. v. Murray*, 431 Md. 225, 232 (2013), including how the Homestead Tax Credit relates to other provisions of the Tax-Property Article. We must also keep in mind that tax credits and other exemptions from taxation must be "strictly construed in favor of the State." *State Dep't of Assessments & Taxation v. Belcher*, 315 Md. 111, 117 (1989). "It is only where the deliberate purpose of the Legislature to grant an exemption is expressed in clear and unequivocal terms that a claim to an exemption can be maintained." *Id.* at 118 (quoting *Pittman v. Housing Auth.*, 180 Md. 457, 460-61 (1942)). This rule of strict construction is "equally applicable when tax credits are implicated." *Id.* at 119.

### A. *The Scope of the Homestead Tax Credit*

The General Assembly has provided that the Homestead Tax Credit "shall be applicable to any State, county, or municipal corporation property tax and any property tax imposed for a bicounty commission." TP § 9-105(b)(2). At first glance, this language could be read either to exclude special benefit

assessments because they are not specifically mentioned or to include them as "county property taxes" because they are effectively imposed and collected by the county, albeit on behalf of the district.

The Tax-Property Article defines "county property tax," however, in a way that would seem not to encompass these special benefit district taxes:

> (h) (1) "County property tax" means the tax on property that is authorized under §§ 6-202 and 10-102 through 10-105 of this article.
>
> (2) "County property tax" does not include a tax imposed on property specifically benefited by local improvements.

TP § 1-101(h); *see also id*. § 1-101(t) (defining "municipal property tax" in much the same way).

Looking first at paragraph (h)(1), the special taxes in question here were authorized under the Local Government and Natural Resources Article, rather than the Tax-Property Article, and thus would not seem to be included within the definition of "county property tax." Nor do the provisions of the Tax-Property Article specified in paragraph (h)(1) clearly encompass special benefit district taxes. Although the term "property tax" is defined to include "a taxing district tax" for purposes of TP §§ 10-102 through 10-105, *see* TP § 10-101(a), those provisions simply provide for when taxes are *due*. Given that special district taxes are generally collected at the same time and in the same way as regular county taxes, *see*, *e.g.*, County Code § 4-7-101(h), it is not surprising that they would be included within §§ 10-102 through 10-105. Section 6-202, however, is the provision that *authorizes* counties to impose general property taxes in the first place and it is controlled by the definition at § 1-101(h), not § 10-101(a). In fact, the Revisor's Note for § 10-101 distinguishes the definition of "property tax" in that section from the "more limited" definition in TP § 1-101. *See* 1985 Md. Laws, ch. 8 at 404 (Revisor's Note). The "more limited" definition of property taxes in § 1-101(h)(1) thus suggests that special benefit taxes are not included in the definition of "county property tax" applicable to the Homestead Tax Credit.

We recognize that this reading of the statute, taken to its logical extreme, might mean that *all* special taxing districts of any

kind would be excluded from the Homestead Tax Credit. For a number of reasons, we do not believe that to be the case. So-called special taxes imposed by a county that are actually "general taxes" and do not specifically benefit local residents, *see* 63 *Opinions of the Attorney General* at 19-23, may be the functional equivalent of county taxes imposed under TP § 6-202. Similarly, quasi-municipal general taxing districts might well be treated like municipalities, and their taxes might fall under the definition of "municipal corporation property tax" in TP § 1-101(t)(1). We need not resolve those issues here because we have been asked only about the special benefit taxes imposed in three particular types of special taxing districts.

The legislative history of the Homestead Tax Credit provides further support for our conclusion that the credit was not intended to apply to special benefit taxes. When the credit was enacted in 1977 it applied only to "county, Baltimore City or municipal property taxes" and, like today, made no reference to special benefit taxes. Md. Ann. Code art. 81, § 12F-7 (Vol. 7B, 1977 Supp.); 1977 Md. Laws, ch. 959, § 2. At the time, the definitions section in Article 81 specifically addressed the extent to which the terms "city" and "county and/or city taxes" were intended to include taxing districts, but the General Assembly did not use either term in defining the scope of the credit.[4] Instead, it used an undefined term that did not mention special benefit districts. Given the canon of statutory construction that exemptions from taxation are construed narrowly, *see Belcher*, 315 Md. at 119, we tend to believe that the General Assembly, by omitting any reference to special benefit taxes, did not envision that the credit would apply to them.

Other aspects of the legislative history seem to confirm this belief. The fiscal note for the 1977 legislation, for example, analyzed the impact of the credit on counties and municipalities but did not mention any impact on special benefit taxing districts. *See* H.B. 1281, 1977 Leg., Reg. Sess., Fiscal Note at 2. And the

---

[4] *See* Md. Ann. Code art. 81, § 2(10) (1975 Repl. Vol.) (defining "city" to "include an incorporated city, incorporated town or incorporated village; and, where special rates of taxation apply in any assessment district or part of a county or city, shall include such assessment district or part of a county or city"); *id.* § 2(14) (defining "county and/or city taxes" to "include taxes levied in or for any taxing district, or part of any county or city, but not taxes levied in consideration of local improvements specially benefited thereby").

bill's sponsor offered an unsuccessful amendment, on a topic unrelated to any issue that we are considering in this opinion, that explicitly applied to "special taxing districts." *See* H.B. 1281, 1977 Leg., Reg. Sess., Proposed Amendments by Delegate Athey. Although we hesitate to read too much into the failure of an amendment on a separate topic, we note that the bill's sponsor knew how to craft legislation that applied to special taxing districts when he wanted to do so. Similarly, although we recognize that the term "special taxing district" is often ambiguous, we also note that in 1977 the Homeowner's Tax Credit (a different property tax credit scheme) explicitly applied to taxes in "special district[s]," while the General Assembly made no reference to such taxes in crafting the Homestead credit. *See* Md. Ann. Code art. 81, § 12F-1 (1975 Repl. Vol.); *see also* TP § 9-104(a)(13) (current provision).

Most importantly, in 2010, the General Assembly specifically considered whether to add taxes imposed by all "special taxing districts" to the list of taxes covered by the Homestead Tax Credit and specifically declined to do so. *See* 2010 Md. Laws, ch. 336. This bill, which extended the Homestead Tax Credit to "property tax[es] imposed for a bicounty commission," originally proposed to extend the credit to taxes imposed for any "special taxing district" as well. S.B. 683, 2010 Leg., Reg. Sess. (First Reader) (proposed § 9-105(b)(2)(ii)). The Maryland Association of Counties and Prince George's County expressed concern that indiscriminately adding *all* special district taxes to the scope of the credit could "inadvertently" extend the credit more broadly than intended. *See* Hearing on S.B. 683 Before the Senate Budget & Taxation Committee, 2010 Leg., Reg. Sess. (March 9, 2010) (written testimony of the Maryland Association of Counties); *id.* (written testimony of Prince George's County on cross-filed H.B. 892). In particular, Prince George's County warned that expanding the credit to taxes that fund special amenities "that directly benefit those living in" the district could generate budget shortfalls and require other taxpayers—who were not directly benefited by the amenities—to subsidize the cost. *Id.* (written testimony of Prince George's County). The committee subsequently amended the bill to remove any reference to special taxing districts, and, as enacted, the legislation only extended the Homestead Tax Credit to bicounty commissions. *See* 2010 Md. Laws, ch. 336. This history further supports our conclusion that the General Assembly did not intend the Homestead Tax Credit to apply to special benefit taxes.

For the reasons emphasized by Prince George's County in 2010, the exclusion of special benefit taxes from the Homestead Tax Credit also makes sense from a policy perspective. At least in Anne Arundel County, a special benefit district of this type must usually collect a set amount of money every year in order to pay for its improvement(s) and services or to make payments on its bond obligations. *See* County Attorney Opinion at 3-4. If some homeowners receive a tax break under the Homestead Tax Credit but not others, the amount of that break would have to be made up from somewhere else. It might come from the other homeowners in the district, whose properties did not increase in value enough to trigger the credit. That would seem an odd result when the improvements or services are, at least in theory, supposed to increase the property values of *all* homeowners. Or the balance would have to come from the county's general funds, even though the benefits flow to district residents rather than to the county as a whole. Granting the Homestead Tax Credit to homeowners in this context, therefore, would seem to allocate the special assessment burden unfairly.

All things considered, we conclude that the General Assembly intended to exclude these types of special benefit taxes from the Homestead Tax Credit. This analysis is consistent with our office's longstanding advice that special benefit taxes are not subject to the Homestead Tax Credit. *See* Letter from David Lyon, Assistant Attorney General, to Robert E. Young, Associate Director, SDAT (Nov. 26, 1997).

Finally, as mentioned briefly above, the Tax-Property Article also explicitly excludes "tax[es] imposed on property specifically benefited by local improvements" from the definition of "county property tax." TP § 1-101(h)(2). To a large extent, this explicit exclusion reinforces our conclusion that the General Assembly did not intend to include special benefit assessments, which are used to "specifically benefit[]" residents of the district in which they are imposed. But we also recognize that if this were the only ground on which to rest our conclusion, the exclusion for special benefit districts might be limited only to those that provide *physical* infrastructure improvements, rather than special services. This is because the term "improvement" is used throughout the Tax-Property Article to refer to physical changes to real property. *See*, *e.g.*, TP §§ 8-104, 9-204.1, 9-229, 9-304, 9-315, 13-304; *but see* LG § 21-504 (making specific reference to an "infrastructure improvements" as opposed to just "improvements")

It is possible that the General Assembly did not intend for the term "improvement" to be read so narrowly in this context and, instead, meant to use it as shorthand for all special benefit districts, whether they fund physical improvements, special services, or both. Although some states distinguish special taxes levied for infrastructure improvements from those levied for special services, it does not appear that Maryland has done so. *Compare* 14 McQuillin, The Law of Municipal Corporations § 38:4 (3d ed. 2008) (summarizing other states' law), *with Pumphrey v. County Comm'rs of Anne Arundel County*, 212 Md. 536, 542-43 (1957) (rejecting landowner's argument that fee for garbage services was an invalid special assessment); *see also Floyd v. Mayor & City Council of Baltimore*, 407 Md. 467, 485 (2009) (noting "special benefit assessments" may be imposed to fund both infrastructure improvements and special services); *Williams*, 334 Md. at 122 (explaining that, as with other improvements, "the properties in the District are presumed to enjoy an increase in value as a result of the special benefits conferred"). Indeed, when the Homestead Tax Credit was originally enacted in 1977, the Court of Appeals had already determined that a fee for garbage collection services could be a valid special assessment akin to a more traditional infrastructure improvement. *See Pumphrey*, 212 Md. at 542-43. And at least two other state courts have concluded that the language of constitutional provisions permitting special assessments only for "local improvements" was broad enough to encompass special districts that fund special services. *See City of Seattle v. Rogers Clothing for Men, Inc.*, 114 Wash. 2d 213, 224 (1990); *State v. Reis*, 38 Minn. 371, 372-76 (1888).

Even if the General Assembly *did* mean to limit the phrase "local improvements" to physical improvements, however, we do not think the phrase creates a negative implication that special benefit taxes used to fund special services must be included within the scope of the Homestead Tax Credit. The language in paragraph TP § 1-101(h)(2) dates back to an exclusion from the definition of "county and/or city taxes" as it existed in 1977. At that time, the phrase was defined to include taxes levied for "any taxing district, or part of a city or county" but to *exclude* "taxes levied in consideration of local improvements specially benefited thereby." Md. Ann. Code art. 81, § 2(14) (1975 Repl. Vol.). But, as mentioned above, the original Homestead Tax Credit did not use the phrase "county and/or city taxes," so it is not clear that the language was ever intended to govern the scope of the credit.

Moreover, the language in (h)(2) was left out when the Tax-Property Article was first codified in 1985, *see* 1985 Md. Laws, ch. 8 § 2, and the current exclusion of "improvements" from the definitions of "county property tax" and "municipal property tax" was added the next year merely as part of a corrective bill intended to fix errors and omissions in the code. *See* 1986 Md. Laws, ch. 171. Given this history, we think that the explicit exclusion for "improvements" was likely added out of an abundance of caution to make clear that the Homestead credit did not apply to such assessments. We see no evidence that the General Assembly intended the phrase to extend—by implication—the scope of the Homestead credit to special assessments for special services. We therefore conclude that the Homestead Tax Credit in TP § 9-105 does not cover valid special benefit taxes used to fund either infrastructure improvements or special services. *See* Letter from David Lyon to Robert E. Young, *supra* (reaching the same conclusion).

**B.** **The Special Benefit Taxes Imposed in Waterways Improvement Districts, Shore Erosion Control Districts, and Special Community Benefit Districts Are Not Covered By the Homestead Tax Credit.**

Applying this interpretation here, we conclude that none of the three types of special district taxes in question is covered by the Homestead Tax Credit. We have not analyzed every special taxing district in Anne Arundel County individually but, as explained in the background section, it appears under County law that all of these districts impose special benefit taxes for which the credit is unavailable.

### 1.    Waterways Improvement Districts

The assessments in Waterways Improvement Districts seem clearly to be imposed for the purpose of funding the construction of local improvements that would benefit the residents of the district. All of the districts identified in § 4-7-406 of the County Code are described as having been formed for the purpose of funding the dredging of nearby waters or the maintenance of nearby jetties or breakwaters. County Code § 4-7-406; *see also* NR § 8-708 (authorizing use of Waterway Improvement Fund to finance waterway improvements, including dredging and construction of jetties and breakwaters).

### 2. Shore Erosion Control Districts

Although we reach the same conclusion with respect to Shore Erosion Control Districts, the analysis is more complicated. Like Waterway Improvement Districts, Shore Erosion Control Districts exist specifically to fund local infrastructure improvements. County Code §§ 4-7-303 (establishing districts "for the purpose of the construction, maintenance, and repair of facilities for shore erosion control"). But the State law authorizing the County to impose a special tax for its Shore Erosion Control Districts seems, at first blush, to require that the tax be treated like other county taxes: "[A] tax under this section shall: (1) be imposed and collected as county taxes are imposed and collected; and (2) have the same priority rights, bear the same interest and penalties, and *in every respect be treated the same as county taxes*." LG § 21-306(b) (emphasis added); *see also* Md. Ann. Code art. 25, § 167F (2005 Repl. Vol.) (predecessor provision). This language arguably indicates that these erosion control district taxes should be eligible for the same credits as county taxes, including the Homestead Tax Credit. As the Land Use Article Review Committee noted when considering revisions to a similarly-worded provision governing Maryland-National Capital Park and Planning Commission taxes, this language is "unclear" as to "whether exemptions and credits that apply to property assessed for taxation by a county" should also "apply to the taxes imposed under this subtitle." Md. Code Ann., Land Use § 18-304(e) (2012 Repl. Vol.) (Revisor's Note).

We do not believe, however, that the General Assembly intended this language in the Local Government Article to control the scope of the Homestead Tax Credit in the Tax-Property Article. As an initial matter, the Legislature borrowed the language verbatim from an earlier provision governing the imposition of shore erosion control taxes in all counties. *See* LG § 21-213(b); *see also* Art. 25 § 166(b) (predecessor provision). Because the General Assembly drafted this earlier provision in 1953, *see* 1953 Md. Laws, ch. 277, well before the Homestead Tax Credit was enacted, it presumably did not have that particular credit in mind.

More importantly, the relevant provision in the Local Government Article focuses on how the taxes are "imposed and collected," rather than more broadly on the calculation of taxes or the scope of tax credits and exemptions. *Pumphrey*, 212 Md. at 542 ("The fact that the charge is levied and collected as county

taxes . . . merely provides for the manner of collection."). When, as here, "a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items" that are similar to those listed. *See Haile v. State*, 431 Md. 448, 468-69 (2013) (quoting Black's Law Dictionary 594 (9th ed. 2009) on the meaning of "*ejusdem generis*"); *see also* 2A Sutherland, Statutes and Statutory Construction § 47:17, at 364-68 (7th ed. 2014). The phrase "in every respect be treated the same as county property taxes" should therefore be viewed in context as focused on the collection and enforcement of taxes instead of the manner of assessing the amount of tax in the first instance.

Moreover, with respect to the calculation of taxes and in particular the scope of tax credits, the Tax-Property Article is far more specific than the Local Government Article and should govern in the event of any conflict between the two. *See*, *e.g.*, *Government Employees Ins. Co. v. Insurance Comm'r*, 332 Md. 124, 132-33 (1993) (explaining that "[w]here provisions of one [statute] deal with the common subject generally and those of the other do so more specifically," one should reconcile the two by "viewing the more specific statute as an exception to the more general one"). We thus conclude that the exclusion for special benefit taxes in the Tax-Property Article governs and that such taxes imposed on behalf of the County's Shore Erosion Control Districts are excluded from the scope of the Homestead Tax Credit.

### 3.    Special Community Benefit Districts

As for Special Community Districts, it seems clear that the taxes imposed in them are for improvements and services that provide a special benefit to local residents. The County Code explicitly provides that Special Community Benefit Districts must be formed to "furnish and provide *special privileges or benefits* to persons or property in the district[]." County Code § 4-7-202 (emphasis added). Indeed, we have previously concluded that the County's Special Community Benefit Districts levy valid special benefit taxes because the "taxes are levied . . . according to the special privileges or benefits conferred upon the property and . . . the tax revenues resulting from that levy are to be used exclusively to pay the costs of furnishing, providing, and maintaining such special privileges or benefits." 63 *Opinions of the Attorney General* at 23.

Before concluding our opinion, we wish to make clear its limitations. Our conclusion as to special *benefit* taxes may not apply with equal force to all special taxing districts. Some special taxing districts, for example, might impose "general taxes" rather than the type of special benefit assessments discussed in this opinion, *see* 63 *Opinions of the Attorney General* at 20, and quasi-municipal taxing districts might be governed by a different rule. As we have explained previously, whether a tax qualifies as a special benefit tax depends in part on "the local laws defining the nature of that tax" and the purposes for which the funds may be used under those local laws. *See id*. at 22-23. We have not conducted a general survey of other special taxing districts in Anne Arundel County and elsewhere to see how the taxes they impose might affect the conclusion we reach here. We did not do so because it appears that, under Anne Arundel County law, the three special taxing districts that were the subject of this request all impose the kind of special benefit taxes that lie beyond the scope of the Homestead credit in TP § 9-105. If the County is concerned that any particular district might not fall within the statutory exemption for special benefit districts, it should ask SDAT for guidance in the first instance.

### III

### Conclusion

The Homestead Tax Credit does not apply to special district taxes that, like those at issue here, fund special improvements and services that specially benefit the property owners within the district. We therefore agree with the opinion of the Anne Arundel County Attorney that the credit in TP § 9-105 does not apply to the three categories of districts in question.

> Douglas F. Gansler
> Attorney General of Maryland
>
> Patrick B. Hughes
> Assistant Attorney General

Adam D. Snyder
Chief Counsel, Opinions & Advice